## CHRISTOPHER *v.* CHRISTOPHER.

## (*Nashville.* March 16, 1893.)

1. HOMESTEAD AND DOWER. *Exceptions to report of assignment untenable, when.*

Where Commissioners for assignment of widow's homestead and dower are agreed upon by all the parties, their report is not subject to exception, upon the ground that the record fails to show that they were not related to the parties.

2. SAME. *Same.*

Exception to Commissioners' report assigning widow's homestead and dower, averring that the Commissioners were not properly sworn, is untenable, where the report recites that they were "qualified," and the proof shows they were in fact sworn by the surveyor.

Code construed: §3263 (M. & V.); §2415 (T. & S.).

3. SAME. *Same.*

Commissioners' report assigning widow's homestead and dower, each by separate boundaries, is not subject to exception for failing to state that the homestead so allotted was worth one thousand dollars, the proof showing that it was in fact of the value of one thousand dollars.

4. SAME. *How assigned to widow.*

Where husband occupied a homestead on his lands at and prior to his death, the Commissioners, who assign homestead and dower to his widow, should first assign to her a homestead of the value of one thousand dollars, embracing therein the improvements so occupied by the husband, estimating them at their value, and then they should assign to her, as dower, one-third in value of the remaining lands. The widow must, in such case, take the homestead im-

Christopher *v.* Christopher.

provements at their value as part of her homestead, and cannot elect to take them free as part of her dower.

Code construed: §§ 2944, 3250 (M. & V.).

FROM WILLIAMSON.

Appeal from County Court of Williamson County. W. O'N. PERKINS, J.

HEARN & BERRY for Complainant.

J. H. HENDERSON for Respondent.

LEA, J. Martin A. Christopher died in 1891, leaving the petitioner, Susan F. Christopher, his widow, and an only son, the defendant, by a former marriage, his heir. Deceased owned at the time of his death a tract of land upon which he resided, containing about 157 acres. The widow made application to the County Court for homestead and dower to be allotted and assigned her out of said land. Commissioners were appointed at the August term of the Court, but they afterwards declined to act, and at the September term of the Court they were excused and discharged, the widow and son consenting thereto, and the record then recites, "and the parties in interest, viz., Mrs. Susan F. Christopher and W. H. Christopher, assenting thereto, the Court is pleased to appoint as

Commissioners, to lay off, allot, and set apart homestead and dower to said widow, the following-named freeholders, viz., H. T. Snell, W. H. Crocket, Carter Burk, Lucien Elliot, and W. D. Shelton, any three of whom, together with Matt Murry, County Surveyor, will be authorized and empowered to act in the premises." The County Surveyor, together with four of the Commissioners, met and acted, and made their report to the next term of the Court, setting apart as homestead "fifteen acres, including the mansion and all the outhouses," giving the metes and boundaries of said fifteen acres, and then set apart one-third of the balance of the tract as dower, giving the boundaries thereof. To the report the petitioner filed a number of exceptions, which were overruled by the Court, after proof had been taken, and the report confirmed. Appeal prayed and granted, and assignment of errors practically embodying the exceptions to the report, the more material of which we will notice.

*First.*—It is objected that the record only shows that the Commissioners were freeholders, and failed to show that they were in nowise related to the parties in interest. It is a sufficient answer to this objection, to state that the Commissioners were appointed by consent of the parties interested.

*Second.*—It was objected that the Commissioners were not properly sworn. The report recites "after being qualified, and a thorough examination and a careful survey, we have," etc. This is a sufficient statement that they were sworn, and, besides, the

proof shows that they were sworn by the surveyor, who, under § 3263, M. & V. Code, has the right, and it is made his duty, to swear them.

*Third.*—It is objected that the report does not state · the value of the homestead set apart, and that the same is not worth one thousand dollars. It would have been more regular to have recited in the report the value of the homestead, but this is not fatal; and, besides, the proof, by a decided preponderance, shows both by the Commissioners and other disinterested witnesses, that the homestead set apart was worth one thousand dollars.

*Fourth.*—The exception most relied on, and earnestly argued, was that the widow had the power to elect where the homestead should be located, and she desired that the mansion house and other improvements be included in the dower, so that the value of the improvements should not be estimated, and that she be permitted to select a homestead outside of the improvements. The Commissioners, in first laying off the homestead, followed the statute, M. & V. Code, §§ 2944 and 3250, which provides, "where a widow is entitled to both homestead and dower out of · the same lands, the Commissioners shall set apart the homestead first, and then one-third of the remainder of such lands as dower." In this case, the widow had no right of election, for her husband, the owner of the land, had made a selection by having his residence and home thereon many years prior to and at the time of his death, and she, as

widow, was bound by his election. We hold, therefore, that the action of the Commissioners in first setting aside the homestead, including the mansion and adjacent outhouses, to the value of one thousand dollars, and then assigning one-third of the balance of the land as dower, was correct, and the decree of the Court confirming the report is affirmed, and petitioner will pay the cost.

### DISSENTING OPINION.

WILKES, J. I cannot concur with the holding of the majority of the Court upon the last point.

The Constitution, Article II., Section 11, provides: "A homestead in the possession of each head of a family, and the improvements thereon, to the value, in all, of one thousand dollars, shall be exempt from sale under legal process during the life of such head of a family, to inure to the benefit of the widow, and shall be exempt during the minority of the children occupying the same," etc.

This constitutional provision was put into effect and operation by the Act of 1870, Second Session, Chapter 80, Sections 1 to 9, in almost the identical language used in the Constitution. Section 3 of this Act prescribes the mode of setting apart homestead under the Act, and directs that three freeholders shall examine the premises, and, on oath,

set apart said homestead, including the mansion and outhouses, etc.

By the Act of 1879, Chapter 171, this original homestead law was amended so as to read: "A homestead *or real estate* in the possession of or belonging to each head of a family, and the improvements thereon, *if any*, to the value of, in all, one thousand dollars, shall be exempt from execution or attachment or sale under legal process, and each head of a family owning real estate shall have the *right to elect* where the homestead or said exemption shall be set apart, whether living on the same or not."

By Section 2 of said Act, this homestead, that is, such as fixed by the amending Act, shall inure to the benefit of the widow and children, etc.

Section 3 prescribes how the homestead shall be set apart under said Act, and provides that the homestead shall include the mansion and outhouses, if *so desired by the head of a family*. These Acts are found in the compilation by Milliken & Vertrees as §§ 2935, 2936, 2940, 2943, in language but little varying from the Acts compiled.

The Act of 1873, Ch. 98, compiled by Milliken & Vertrees as §§ 2944 and 3250, prescribes the manner in which homestead and dower shall be set apart to a widow, when she is entitled to take both out of the same lands, directing that the homestead shall be first set apart, and then one-third of the remainder of the husband's land shall constitute the dower.

By § 3247, M. & V. compilation, it is directed that in the dower shall be comprehended (or included) the dwelling-house in which the husband was accustomed, most generally, to dwell next before his death, commonly called the mansion-house, unless the widow agree that it shall not be included, together with the offices, outhouses, buildings, and other improvements thereunto belonging or appertaining.

The value of this mansion or dwelling-house and other improvements shall not be taken into account in assigning dower, but they go to the widow free of any valuation or charge. *Vincent v. Vincent*, 1 Heis., 338; *Puryear* v. *Puryear*, 5 Bax., 644.

It is the object and policy of the law to give to the widow both homestead and dower whenever it can be done—that is, whenever there is land sufficient to permit the allotment of both. In *Lovelace* v. *Lovelace*, 1 Legal Rep., 281, it is held that the widow is entitled to take both homestead and dower, and that the right to dower is unaffected by any legislation creating a homestead right. It is further said there is nothing in the provisions of the Constitution, Article II., Section 11, which can be held as qualifying or restricting the widow's right to dower, while the Act of 1873 clearly recognizes the right to both dower and homestead, and prescribes the mode in which both are to be assigned.

I am of opinion that, under the Act of 1879,

Ch. 171 (M. & V. compilation, § 2936), each head of a family has the right to elect where the homestead shall be set apart, whether living on the same or not.

In *Flatt* v. *Stadler & Co.*, 16 Lea, 376, it is said, referring to this Act:

"It will appear that the purpose of the Legislature was to give the head of a family the privilege to take as his homestead that which he actually occupied, or, at his election, to take other lands on which he did not live, and the true construction of said section is that the head of the family may elect where the homestead on said exemption shall be set apart upon any real estate he owns. But it is not intended, nor does the language imply, that the homestead or exemption is to be held by any different or more absolute character of title in the one case than in the other." And again it is said: "It seems to us that the amendment designed was to allow the head of the family to locate his exemption upon any part of his real estate, and to relieve him from the necessity of taking it upon the part actually occupied with the improvements."

I cannot agree that the mere occupancy of certain premises and improvements as a home fixes upon such premises and improvements the status and legal character of the homestead which the Constitution secures and the statute provides for each head of a family, but the head of the family has the right to elect to take his homestead out

of any lands he may own, whether they are being occupied or have been occupied as a residence or mansion or home, which is all that is claimed was done in this case.

It is true the constitutional provision is that the homestead and improvements thereon, to the value of $1,000, shall be exempt, etc., but the improvements referred to are not necessarily those in which the head of the family is residing, but such improvements as are on that portion of the land which may be selected and allotted; or, in other words, if there are improvements on the lands selected and allotted, they must be taken into account in estimating the value of the homestead thus allotted. Upon this construction the constitutional provision and the Act of 1879 may be made to harmonize, but upon any other the Act of 1879 would be contrary to the constitutional provision. We will suppose that the head of a family, while in prosperous circumstances, has become the owner of 1,000 acres of land, worth $10 per acre. Upon it he has erected a mansion or residence worth $5,000. Reverses of fortune come upon him, and his lands are seized under execution. If allowed to do so, he can select 100 acres from his premises, not embracing his residence, which will furnish him a comfortable home in his reduced circumstances. The portion thus selected may have improvements upon it or it may not. If he is compelled to take his homestead at the place of and embracing his residence, then it must follow

that homestead in kind cannot be allotted to him, because the residence alone exceeds the $1,000 limit, and hence the entire lands must be sold, and $1,000 of the proceeds must be invested in other lands, or, it may be, in a portion of the same lands, provided they are bought at such sale, and not allotted in kind.

I am constrained to hold that the head of the family has the right to select his homestead out of any lands he may own, without regard to to the place or fact of his residence. This right inures to the benefit of his widow by the plain letter of the law. After the death of her husband, she becomes the head of the family within the meaning of the statutes of exemption. *Bachman* v. *Crawford*, 3 Hum., 213; *Brien, ex parte*, 2 Tenn. Ch., 33; 41 Geo., 153.

In 15 Lea, 529, case of *Rhea* v. *Rhea*, it is said: " Since the Act of 1879, the wife may assert her right to homestead in any lands to which the right attaches under the Act," etc. That was a case of a wife deserted by her husband, but certainly the rule would apply with equal force to the widow of a deceased husband.

Now, if the law intends that she shall have both homestead and dower, and that her dower estate shall not be curtailed or affected by her homestead right, then the homestead should be so assigned as not to interfere with the dower or abridge the value of either the homestead or dower.

27—8 p

The homestead must be assigned first. Now, in order to leave the premises in such condition that she may enjoy the practical benefit of her dower estate, the homestead must be set apart in such lands as lie outside of the mansion-house and premises. Otherwise, her homestead and dower will cover the same premises, or she will fail to get in her dower the mansion-house and improvements, which she is entitled to take without valuation, because it has already been assigned her as homestead at a valuation. Theoretically, she may have homestead and dower embracing the same premises, holding the former in trust for herself and children, and the latter in her own right, but, so far as practical value is concerned, the assignment of the homestead in premises which she is entitled to receive as dower, curtails, to that extent, the value of the dower estate. If, therefore, she cannot take her homestead in lands other than those embracing the mansion or residence, and is compelled to take it in such residence premises, then to the extent of the value of the improvements included in the homestead is her dower estate curtailed and rendered less valuable. Not only so, but she is practically denied both homestead and dower to the full value and extent allowed by law, although there may be sufficient lands to furnish both to the full extent of the law.

I am, therefore, of opinion that the widow has the right to select and have allotted to her homestead in lands other than those which include

the residence or mansion-house, provided they are owned by the husband at the time of his death, and then, in addition, to have assigned to her the said residence or mansion-house and premises as dower, without valuation of the improvements. I do not mean to hold that the widow may select homestead in any lands which the husband has transferred in his life-time, even though she may not have joined in the conveyance. Her right, as widow, extends only to lands owned by the husband at his death, no other equity appearing.

While it is true the Act of 1870 says the homestead *exempt in the possession* of the husband shall, upon his death, go to his widow, and, under that Act, only a homestead in *actual possession* could pass, yet the Act of 1879 *enlarged* the homestead right of both the *husband and widow* so as to give to *each* the additional right to elect where the homestead shall be assigned. After the passage of that Act, the widow's rights were fixed by it to any lands owned by the husband at his death, and were not confined or limited to a homestead in *possession* of the husband at his death, as provided by the Act of 1870. Since the passage of the Act of 1879, it is the homestead right, as fixed by that Act, which inures to the benefit of the widow, and not simply such right as passed to her under the Act of 1870. *Threat* v. *Moody,* 3 Pick., 143.