Davis Hosiery Mills v. Higdon.

DAVIS HOSIERY MILLS *v.* D. HIGDON.

(*Knoxville.*   September Term, 1916.)

MASTER AND SERVANT.   Injuries to servant.   Assumption of risk.

Where both the servant and master knew of the specific defect in a pulley which was pointed out by the servant in a complaint made to the master that it was dangerous, although the servant did not then appreciate that the danger would or might come in the particular form it afterward did, the promise of the master to repair suspended the servant's assumption of the risk and rendered the master liable for a resulting injury.

Case cited and approved: Alkire v. Myers Lumber Co., 57 Wash., 300.

Cases cited and distinguished: Holloran v. Union Iron & Foundry Co., 133 Mo., 470; Lupher v. Atchison, etc., R. Co., 86 Kan., 712.

FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —NATHAN L. BACHMAN, Judge.

FORD & YARNELL, for plaintiff.

SIZER, CHAMBLISS & CHAMBLISS, for defendant.

Mr. Justice Williams delivered the opinion of the Court.

This is an action for personal injuries against the hosiery mills, in which Higdon, a man twenty-eight years of age, was employed. He had been engaged for about two months in regulating the temperature of certain drying rooms. He used for that purpose a flat wire, or narrow steel tape, which was attached to a ventilator. This wire at one place where it came out of the drying room through the partition wall into the hallway, where it hung so plaintiff could handle it, passed close to a large wooden pulley.

The plaintiff's testimony is to the effect that about two weeks before his injuries he found on the floor underneath a bit of wood that appeared to have come out of the pulley. In fact, it had fallen out of the face of the pulley in such way as to cause a nick or gap in its rim. Higdon took the piece to the foreman and told him the pulley ought to be fixed; that it was dangerous. The foreman assured him that it was not dangerous, and that he should go forward with his work, which he did. Later on, however, he went again to the foreman and told him that he wanted the pulley fixed, and that he was going to quit if it was not fixed, at which time the foreman, while yet contending that the pulley was safe, promised to repair it within a definite time stated.

The first time he complained Higdon testifies that he feared the pulley would burst or fly to pieces,

but that he did not know what would happen; that he was afraid of it. On the later occasion when the promise to repair was made, he says that he did not fear that the pulley would burst.

"Q. What was the danger, Mr. Higdon, that you thought about?

"A. It was dangerous; it did not look right to me; it was shackly and making a noise; it did not run true."

He stated that he did not think there was any danger from the wire catching in the nick of the pulley as it revolved. The injury, however, according to plaintiff's proof, happened in that way and within the time covered by the promise. Simultaneously with the catching of the wire in the rim of the pulley where the gap was, the suspended end of it, he testifies, wrapped around plaintiff's arm, lifted him from the floor up near to the pulley and ceiling, he straining violently the while to keep away from the pulley and belt, until the wire broke, and he dropped back to the floor.

A judgment in favor of plaintiff appealed from has been affirmed by the court of civil appeals. Errors in support of a petition for *certiorari* have been assigned in this court, and the cause has been argued at the bar.

The insistence of the defendant company based on these facts is that it, as employer, did not by any promise made assume, to the exoneration of plaintiff, any risk that the wire would catch in the

nick in the pulley and cause injury, since that was a thing that was not thought of by plaintiff or made a basis or part of his complaint. Relied upon in support is the following excerpt from 4 Labatt, Master & Servant (2d Ed.) sec. 1345:

"That the servant's reliance on the master's promise was the efficient cause of the injury cannot be inferred where the evidence shows that the servant apprehended no danger from the particular service, in which, pending the fulfillment of the promise, he was engaged when he received the injury."

Anything said by this text-writer on the subject to which he has devoted so much time and true skill is deserving of much consideration. The following quotation is made from a note prepared by him, appearing in 40 L. R. A., 793, as follows:

"In order to enable the servant to recover he must show: (1) that he received from the master or the master's representative some assurance the effect of which was that the condition under which he was working would be so altered that the particular danger from which he apprehended injury would cease to exist; and (2) that his reliance on that assurance was the efficient cause of his remaining in the employment."

In each instance a single case is cited by Mr. Labatt as supporting authority, and that case will now be noticed. No other on the immediate point has been cited or found.

In *Holloran* v. *Union Iron & Foundry Co.*, 133 Mo., 470, 35 S. W., 260, it appeared that the plaintiff was engaged in moving a derrick on planks across uncovered girders of a building, and to guide the derrick by prying it from behind by means of a crowbar he stepped to one side, allowing one foot to rest on the plank on which he had been standing, and bracing the other against one of the iron girders. While in this position his foot braced against the girder slipped, and he fell into the cellar below. A claim advanced by plaintiff was that there had been a promise to furnish additional planks. The court, after a reference to the exception to the rule of assumption of risk growing out of a promise to remedy the defective situation, said:

"Does plaintiff bring himself within the exception and qualification of the rule last mentioned? We think most clearly not, because plaintiff himself testified, and reiterated it over and over, that he did not think he was in a dangerous position when he put one of his feet on the girder and the other on the plank. Whatever need there might have been for more planks to expedite the work of rolling in the columns, or whatever danger he anticipated from the want of planks in some other way, his own evidence confronts him, in which he three times asseverates that he did not think himself in any danger at the time his foot slipped. As he apprehended no risk from placing himself in this attitude, it is self-evident he had not sought or received any as-

surance that this unanticipated risk should be obviated, and, as he had no promise covering this risk, it necessarily follows that he was not induced to remain in the service and expose himself to danger by the promise of Droney or any one else to remedy it, so far as the real cause of his injury is concerned.''

It is apparent that in the above case the fall was caused by reason of the slipping of the foot from the girder, upon which it had been rested without apprehension of any danger therefrom. The injury was not caused immediately by reason of any defective appliance complained of, and it did not appear that other planks were desired to obviate a slippery condition of the girder. The court had already specifically ruled that the fall was not occasioned by an insufficiency in the number of planks, but was the result simply of a miscalculation as to plaintiff's position, and his accidental slip.

Whatever may be the true construction of the opinion in the above case, we cannot assent to the soundness of the contention of appellant company in the case before us.

Mr. Labatt, in 4 Labatt's Master & Servant (2d Ed.), sec. 1342, comments on the fact that the situation arising out of a promise to remove a specific cause of danger is analogous to that produced by an assurance given the servant that there is no present danger. In the latter case it has never been thought to be a requisite to a recovery that the servant show that he apprehended danger in the

special form it took as shown by the event. Nor is it necessary, we think, in a case based upon a promise to repair, for the servant to show that, when he complained and received the promise, he appreciated the fact that the danger would or might come in the particular form it did afterward. He need not grasp, understand, or specify the particular way in which the injury may be occasioned, when he lodges the complaint of the specific defectiveness of the instrumentality as a probable source of danger to himself. That the servant is not able to foresee and fully appreciate such particular manifestation of danger feared as readily as the master may be attributed to his ignorance or inexperience as compared with the master, and is really one of the reasons supporting the rule that relieves the servant of the assumption of risk after promise made.

If the master or his representative understood that the defect referred to in the promise to repair was likely to cause injury in the way it afterwards did in fact, then the promise is none the less effective because the servant did not. The facts show this to be true of the master in pending case. The risk was not unanticipated by the master when the promise was made, and that promise included the dangers to the servant while at his accustomed work within the zone of risk from the defective machinery.

The decisions of the courts are not in harmony on the question as to whether, if the complaint made

by the servant that the instrumentality was defective be general, that is, without a specification of the particular defect that produces the injury, the servant accepting the promise to repair may recover.

In the case of *Lupher* v. *Atchison, etc., R. Co.*, 86 Kan., 712, 122 Pac., 106, Ann. Cas., 1913C, 498, this phase of the doctrine is discussed and authorities cited, the court concluding:

"It hardly seems to accord with justice to hold that the servant who complains to the master that an instrument like a hand car is in bad shape, and who receives and relies upon a promise to have it put in proper shape, should be held to assume all risk of injuries that may thereafter be caused by its defective condition simply because in his complaint he fails to enumerate the specific defects. Upon notice and complaint that a specific thing or place is in unsafe condition, a promise to make general repair ought to be sufficient. In this case we think the complaint was sufficient to call the master's attention to the defective condition of the switch and its surroundings."

See, also, *Alkire* v. *Myers Lumber Co.*, 57 Wash., 300, 106 Pac., 915.

It should be observed that in each of the cases just cited it appeared that the particular defect leading to the servant's injury was in the mind of the promising master. Without intimating an opinion as to the soundness of the view enforced by the Kansas court on the question before it, we think

that in the instant case, where both the servant and the master knew of the specific defect in pulley, which was pointed out in the complaint made, a much stronger reason compels our ruling as above on the contention of appellant.

We are of the opinion that the promise to repair suspended the servant's implied contract to run the risk of the dangers of the employment.

Finding no reversible error in the judgment complained of, it is affirmed.