# In re MOORE'S ESTATE. No. 8.—234 S. W. (2d) 847.

Western Section.   December 12, 1949.

Petition for Certiorari denied by Supreme Court, March 17, 1950.

134

Charles L. Neeley, of Memphis, for plaintiff.

Ernest Williams, of Memphis, solicitor and guardian ad litem for minor defendants.

ANDERSON, P. J.  In this case which comes to us from the Probate Court of Shelby County, a proceeding assigning dower to a widow is brought up for review by the guardian ad litem of minor children.  There is also presented for consideration an insistence by the minor children of a former marriage that an allowance for their support awarded in connection with divorce proceedings by their mother against their father survived the death of the latter and is a charge against his estate.

The deceased father, James Garner Moore, Jr., died intestate September 17, 1947.  His widow, Josephine Lucas Moore, was appointed administratrix.  In addition to his widow he left surviving four children:  one, Charles Michael Moore, approximately three years of age, a child of the deceased and Josephine Lucas Moore, who at the time of his father's death lived with his father and mother

at their home in Rosemark, a community in Shelby County and three other children, James Garner Moore III, about fifteen years of age, Douglass Shelton Moore, about twelve years of age, and Martha Virginia Moore, about eight years of age, the children of a former marriage of James Garner Moore, Jr. This former marriage had been dissolved by a decree of divorce in a proceeding brought for that purpose by the wife in the chancery court. In connection with the divorce, the court awarded the custody of the three minor children to the mother and provided that of these James Garner Moore III might continue to live with the grandmother, Mrs. James Garner Moore, Sr. It was also decreed that the husband pay $25 each for the support and maintenance of Martha Virginia Moore and Douglass Shelton Moore and that should there be a change in the status of James Garner Moore III the husband should pay for his support the amount stipulated for each of the other children.

At the time of his death the deceased was the owner of a home in the community of Rosemark having a value of $8,720. Immediately in the rear of the house there was a tract of land containing 12.82 acres valued at $1,280, also owned by the deceased. In addition, the deceased owned a 100-acre tract of land valued at $50 per acre; a 221-acre tract valued at $65 per acre; and a 20-acre tract valued at $65 per acre. The aggregate value of the foregoing property is the sum of $30,080. The deceased also had an interest in a gin, which it is insisted was a partnership interest, being operated under the name of Moore Bros. Gin Company. The Commissioners valued this gin at $24,515, and the interest of the decedent at the sum of $8,171.66. His personal property consisted of $1,662.81 cash in bank and certain mules which were sold for the sum of $962.47. The estate received from

the operation of the gin for the year 1947 the sum of $3769.26, and from cotton rentals the sum of $6,279.05, against which there was a charge of $2,246.39, making a net amount received from both sources for the year 1947 of $7,801.92.

The widow, Josephine Lucas Moore, filed a petition to have a year's support set aside and also a petition for the allotment of dower. Ernest B. Williams, Esq., a member of the Memphis bar, was appointed a guardian ad litem for the minor children. Commissioners were appointed to allot a year's support and assign dower.

The commissioners set aside as dower land on which the home was located. They specifically stated that they did not take into consideration the value of the improvements. The report also shows that the commissioners did not segregate any specific property as dower but allowed the widow a life interest in the whole, including the 12.82-acre tract, and a life interest in one-third of all the balance of the real estate. In addition, they treated the gin property as real estate and allowed dower in this property. The report shows that the widow waived her homestead rights with a view of obtaining as dower a life interest in the home without the value of the improvements being taken into consideration.

In this Court it is insisted that in assigning dower it was error to include the land on which the mansion house was situated without reference to the value thereof, and moreover that it was error to hold that in order to obtain dower in the entire homestead tract without consideration of the value of the improvements, the widow could waive the rights of homestead.

It is argued that the result was a manifest injustice to the minor children because the widow was thereby allowed dower far in excess of the amount to which she was

entitled, especially since homestead inures to the benefit of the widow and minor children, while dower inures to the benefit of the widow alone. It is insisted that the widow should not be permitted to waive the right of the minor children in order to increase her own benefits in the property of the father of the children.

The questions just presented are governed by statute. Code Section 7719 deals with the homestead exemption. It provides that a homestead or real estate in the possession of or belonging to each head of a family and the improvements if any thereon to the value or $1000 shall be exempt from sale under legal proceedings during the life of such head of the family and shall inure to the benefit of such widow and children of such head of the family.

Code Section 83851 provides that a widow of an intestate shall be entitled to dower and one-third part of all the lands of which her husband died seized and possessed or of which he was equitable owner at the time of his death.

Code Section 8353 provides that this third part shall inure to the widow's own proper use, benefit and behoof for and during the term of her natural life.

Code Section 8354 provides that in said third part shall be comprehended the dwelling house in which the husband was accustomed most generally to dwell next before his death, unless the widow agree that it shall not be included, together with the outhouses, buildings and other improvements thereunto belonging or appertaining.

Code Section 8355 provides an exception to the foregoing, to the effect that if it appear that the whole of said dwelling house, outhouses and appurtenances cannot be applied to the use of the widow without manifest injustice to the children or other relations, then such part or portion thereof as the court shall conceive will be suf-

ficient to afford her a decent residence, due regard being had to her condition and past manner of life, shall be assigned to her.

Code Section 8356 provides that where there are more than one tract of land subject to dower, the commissioners shall not be compelled to assign the widow a third of each separate tract but may make the assignment according to quality and quantity in such manner as will give her one-third in value of the whole real estate.

Code Section 8357 provides that where a widow is entitled to both homestead and dower out of the same lands, the commissioners shall set apart the homestead first and then one-third of the remainder as dower; and if the real estate is so situated that the homestead and dower cannot be set apart in kind, then such realty shall be sold and $2,000 ($1,000, Code Sec. 7719, and compiler's note under Sec. 7729) of the proceeds thereof invested in real estate for the benefit of said widow and minor children, to be held as a homestead subject to the law governing homesteads; and dower shall be assigned out of the residue of said proceeds.

The first contention is that the Court erred in holding that the widow had a right to waive homestead in order to obtain dower without consideration of the improvements on the tract allotted as dower. It is insisted that the facts of this case bring it within the exception created by Code Section 8355, to the effect that in assigning dower, if it appear that the whole of said dwelling house, outhouses and appurtenances cannot be applied to the use of the widow without manifest injustice to the children, then such part or portion thereof as shall be sufficient to afford the widow a decent residence shall be assigned her. As said, the improvements on the property assigned as dower, consisting of the residence in which the deceased

had lived, had a value of $8,720, and it is argued that since the whole estate had a value of $38,250.61, the allotment to the widow as dower of a life estate in one-third of the property, without taking into consideration the value of the improvements, has resulted in the widow's obtaining far more than the interest to which she is entitled, to the manifest injustice of the children.

■ The homestead right and the widow's dower right are different interests and rest upon entirely different principles. Clark v. Bullen, 147 Tenn. 261, 270, 247 S. W. 107. A basic distinction between the two is that in assigning homestead, the value of the improvements thereon must be estimated and taken into consideration. Christopher v. Christopher, 92 Tenn. 408, 411, 21 S. W. 890. Upon the other hand, the improvements upon the land out of which the dower is to be assigned are not to be considered, as a general rule. This difference presents some difficulty where the widow claims both homestead and dower. See Christopher v. Christopher, supra, and particularly the dissenting opinion.

But it is held that if the widow claims both estates, then under Code Section 8357, the commissioners must set apart the homestead first and one-third of the remainder as dower, and that in so doing, the widow is not entitled to have a homestead set apart so as not to exclude the dwelling house and outbuildings in order that they may be included in her dower without having the value charged to her. The rationale of this view is that since the widow elects to take a homestead she must do so having it burdened with the rule applicable to that estate. Clark v. Bullen, supra; Wilhite v. Farley, 15 Tenn. App. 317.

■ But upon reason and authority, the widow may waive her right to homestead and demand the assignment

of dower so as to include the residence of her husband without regard to the value of the improvements. Clark v. Bullen, supra; Whitehead v. Brownsville Bank, 166 Tenn. 249, 61 S. W. (2d) 975.

Under the facts of the present case, there was no such injustice to the children as is contemplated in Code Section 8355.

From the very earliest times the provision for a widow's dower has been looked upon with favor both in England and in this country, and the courts have uniformly given a broad and liberal construction to the statutory provisions for that estate. Vincent v. Vincent, 48 Tenn. 343. In that case it is said: "The leading object of the statute is to give her (the widow) the mansion house and buildings, or such part thereof as will afford her a decent residence, due regard being had to her condition and past manner of life. It was not the intention to compel the widow to take all the buildings and improvements and to lose any part of that share of the land which was intended to be assigned for her support." See also James v. Fields, 52 Tenn. 394; Wyrick v. Hale, 30 Tenn. App. 597, 209 S. W. (2d) 50.

The primary purpose to provide the widow a residence in addition to support to be derived from the dower interest in the land is recognized in the exception contained in Code Section 8355. That section contemplates a situation where a decent residence may be provided for a widow by assigning to her use only a part or a portion of the "dwelling house, outhouses, and appurtenances," and without assigning the whole thereof to her. If the nature and situation of the property is such that she cannot be provided with a decent residence out of a part or a portion thereof, but only out of the whole, then she is entitled to such a residence without regard to the effect upon the

interest of the children. This is the effect of the ruling in Vincent v. Vincent, supra, and subsequent cases next above cited, which follow that decision. Any other view would defeat what has been said to be the leading object of the statutory provision, namely, to afford a widow a proper residence, due regard being had to her condition and past manner of life, in addition to a means of support provided for by the life estate in one-third of the land.

■ There is no evidence in the present record to indicate that the purpose to provide the widow such a residence could be accomplished by assigning her only a part of the mansion house. So far as appears, she can be adequately provided for only by giving her the whole. This is not a case where the bulk of the estate consists of buildings and other improvements in a city or town from a part of which a widow might have an adequate residence and where to assign her the whole of the improvements by way of dower would result in a manifest injustice to the children. Here in addition to the mansion house and the 12.82 acres on which it was situated, the deceased owned three other tracts of land aggregating 332 acres. The fact that the mansion house was in a village and one of the farms was some three miles distant and the other some four miles cannot be given determinative significance under the facts of this case.

It may be observed that as between the widow and the children, the primary concern for the former manifestly recognizes that the widow's interest is only a life estate with the remainder in the children and that ordinarily the children will live with the widow and thus be provided with a residence. The exception, of course, is in the case of children of a former marriage whose mother has obtained a divorce from the father and the custody of the children has been awarded the mother, or some other

suitable person. However, in these exceptional cases, it must be presumed that the requirements of the children have been met in the judicial disposition of their custory.

We deal next with the contention that it was error not to set aside a specific portion of the property by metes and bounds as dower. The order confirming the report of the commissioners recites that in addition to the mansion house and the property oh which it was situated, ''The widow is further allowed dower in all of the rest and residue of the real estate of James Garner Moore, deceased, including the gin properties, and said real estate shall be rented or leased and the proceeds therefrom shall be paid, one-third to the widow for and during her natural life, and the remaining two-thirds shall be paid to the children of James Garner Moore, deceased.''

We think under the facts of this case, this method of alloting dower was erroneous. Code Section 8371 provides that upon application to an appropriate forum, commissioners, one of whom shall be the county surveyor, shall be appointed to allot and set apart dower according to law. Code Section 8377 provides that in their report, the commissioners shall exhibit a plat of the dower and also plainly set forth the same by metes and bounds where the dower can be so assigned, and if the report is confirmed by the Court, the Clerk shall enter it in full with the plat on the records of the Court. These statutes and others relating to dower contemplate that in a case where the property is so situated and is of such character that it can be done, a specific part of the land of the deceased shall be set apart as dower. Otherwise, the heir would be severely handicapped in dealing with his part of the property, for dower is an encumbrance upon his right. Kitts v. Kitts, 136 Tenn. 341, 189 S. W. 375. The widow

would be likewise at a disadvantage. She would have no right of entry or title to her estate and could not deal with it as her needs might require. Downs v. Allen, 78 Tenn. 652; North v. Puckett, 164 Tenn. 100, 46 S. W. (2d) 73, 81 A. L. R. 1107. For a widow has no estate in the land of her deceased husband until it is assigned to her as dower. Thus, she cannot maintain an action at law for occupation or for rents accruing after the death of her husband before the assignment of her dower. Thompson v. Stacy, 18 Tenn. 493; London v. London, 20 Tenn. 1; nor can she sue for possession of or injury to the land. Guthrie v. Owen, 18 Tenn. 339; Latta v. Brown, 96 Tenn. 343, 34 S. W. 417, 31 L. R. A. 840; Briscoe v. Vaughn, 103 Tenn. 308, 52 S. W. 1068.

So if she hold the mansion house and other lands without having them assigned to her as dower, the heir may recover from her by ejectment because the title is in the heir by descent and he is not bound to cause the dower to be assigned. Tool's Lessee v. Pride, 1 Tenn. 234. But upon the assignment of dower, the widow becomes seized of a freehold estate for life in the portion allotted to her and may deal with it accordingly.

The case of Clift v. Clift, 87 Tenn. 17, 9 S. W. 198, 200 is relied upon as supporting the manner in which the assignment of dower was made. The present record presents no such case as was there under consideration. The Court was there dealing with the lands upon which coal mines were being worked prior to and at the time of the death of the husband by the lessee thereof under a lease for ninety-nine years at a fixed rent or royalty being drawn for all the coal taken out. With respect to these properties, the commissioners assigned to the widow one-third of the rents and royalties to which her husband was entitled, to be held for her from the date of his death for

and during her life, unless the coal and minerals should sooner be exhausted, in which event she was to be entitled to have and enjoy one-third of the husband's interest in the land covered by said leases. Upon appeal, it was held that this was proper under the facts of that case, as being the only practical means of allotting dower with any degree of justice either to the widow or the heirs. Said the Court: the long lease ''prevents the property from being partitioned so as to permit of an allotment by metes and bounds, nor can the value of the husband's interest be arrived at with any degree of acccuracy, so as to charge it upon other property held in severalty out of which dower can be assigned.'' The Court then announces this general rule: ''We hold, therefore, that dower is assignable to widow in mines, quarries, and the like, and she may enjoy the same either by an allotment by metes and bounds or by a share of the rents and royalties, where the mines or quarries were opened and operated in the life of the husband, whether the same be operated by the husband [or by lessees] paying rent or royalty on the yield.''

No such property is involved in the present case, and no discussion, we think, is needed to demonstrate that the rule in that case can have no application to the present one for the reason that the record is devoid of the facts giving rise to it.

██ ██ It is also contended that the Court erred in holding that the widow was entitled to dower in the gin property and in income from the operation of the gin. The basis of this insistence is that the gin property was partnership property and under the applicable law is to be considered as personal property, and therefore, the widow was not entitled to dower thereon. The solution of the question is governed by the recent case of Cultra v. Cultra,

188 Tenn. 506, 221 S. W. (2d) 533. Under the uniform partnership act, Code Sections 7841-7882, when a partnership once acquires realty with partnership funds and for partnership purposes, the realty then becomes personalty for all purposes. The evidence upon the question is meagre, and not entirely satisfactory. It was shown that the gin was in fact operated as a partnership, but it does not appear to our satisfaction as to just how the property was acquired, that is whether with partnership funds and for partnership purposes. If it were, the property is to be regarded as personalty and the widow is not entitled to dower therein. Otherwise, she is. Since the case must be remanded in any event, we think this feature of the matter should be clarified by additional evidence, and settled accordingly.

Finally, it is contended that the Court erred in disallowing the claim of the guardian of the three minor children by a former marriage against the estate of the deceased, based upon a prior adjudication by a court of competent jurisdiction that these children should be paid the sum of $25 each per month by their father.

This adjudication was made in divorce proceedings wherein the mother of the children obtained an absolute divorce from the father and the custody of the children, together with an allowance for their support which is directed to be paid by the father monthly.

The guardian ad litem urges upon us the inherent justness of the minors' claim against the estate of the deceased father. The precise question has not been decided in this state and there is a difference of opinion about it among the courts elsewhere.

It was specifically held in Carey v. Carey, 163 Tenn. 486, 43 S. W. (2d) 498, that the obligation of the father to support his child terminates with the father's death.

But in reaching this conclusion the Court was careful to point out that the obligation sought to be enforced in that case was a common law obligation and not one resting upon contract or definite adjudication in the lifetime of the father. It was recognized that there was authority for a different view where in connection with an absolute divorce, a decree awards the custody of the child to the mother and makes a definite provision for support by the father in the form of periodical payments.

It is obvious therefore that in the Carey case the court did not have for decision the question with which we are confronted. Here, there has been an adjudication in the lifetime of the father by a court of competent jurisdiction that he pay a specified amount per month for the support of the children.

Upon the general subject of the father's obligation to support his minor children, an interesting observation was long ago made in England by Lord Alvaney. With reference to the rule that, ''A father may at his death devise all of his estate to strangers and leave his children upon the parish, and the public can have no remedy by way of indemnity against the executor'', he said: ''I am surprised that this should be the law of any country, but I am afraid it is the law of England''. 2 Kent 203, citing 5 Vesey 444. The observation is quoted in Carey v. Carey, supra, and the rule stated is held to be likewise the law of this state, *where the obligation to support the children does not rest upon contract or definite adjudication* made in the lifetime of the father.

But the facts of life would seem to justify a distinction between a case where the mother has obtained a divorce from the father and the custody of the children has been awarded to her, coupled with the provision for their support, and a case where there has been no disruption of the

marital relation. For in the latter case the natural regard of the father for his children will ordinarily insure that they will share in his estate and the burden of their support will not be thrown upon other relatives or the public, whereas in the former case this natural regard is sometimes warped or perverted by the feeling engendered by the divorce proceeding or the circumstances giving rise thereto. Recognizing this possibility, it has been held that when, through the fault of the father, his family is broken up and his children become in one sense wards of the court, the unrestricted power under the common law to disinherit is taken away from him and he may be compelled, if of sufficient ability, to give security for the support of his children, that shall be binding upon his estate. Miller v. Miller, 64 Me. 484; see also, 17 Am. Jur. 536, Sec. 706; and 27 C. J. S., Divorce, Sec. 323, page 1252.

In a recent text, referring to instances in which the family has been broken up by the fault of the father, it is said that under modern conditions "the weight of adjudicated authority is to the effect that the liability of the father is not necessarily terminated by his death, but may survive against his estate as to subsequently accruing installments" of a judicial award for the support of his children. 17 Am. Jur. 536, Sec. 706; see also, 27 C. J. S., Divorce, Sec. 323, page 1252. Under this view it has been held that a provision in a divorce decree for the payment by the husband of monthly installments for the support of his infant children until the further orders of the court, creates an obligation which is not discharged by his death. Creyts v. Creyts, 143 Mich. 375, 106 N. W. 1111, 114 Am. St. Rep. 656; see also Myers v. Harrington, 70 Cal. App. 680, 234 P. 412; Stone v. Bayley, 75 Wash. 184, 134 P. 820, 824, 48 L. R. A., N. S., 429.

The other view is represented by the majority opinion in the case of Blades v. Szatai, 151 Md. 644, 135 A. 841, 50 A. L. R. 232, which expressly disapproves certain pertinent language in the prior case of Hood v. Hood, 138 Md. 355, 366, 113 A. 899, 15 A. L. R. 774, hereinafter cited.

It is notably significant however that in the Blades case the disruption of the marital relation was not due to the fault of the father. Upon the contrary the award for support of his minor children had been made in connection with a divorce decreed upon a bill filed by him against his wife.

Cases dealing with the question generally, pro and con, are collected in the annotations appearing in 48 L. R. A., N. S., 429, and 50 A. L. R. 241. Subsequent decisions are, Silberman v. Brown, Ohio Com. Pl., 72 N. E. (2d) 267, 269; Guinta v. LoRe, 159 Fla. 448, 31 So. (2d) 704; In re Van Arsdale's Will, 190 Misc. 968, 75 N. Y. S. (2d) 487.

Respecting the duty to pay alimony when decreed, it is also recognized that while the obligation is ordinarily considered as terminating with the death of either of the parties, the courts generally have the power to provide for the continuance of alimony after the husband's death and also that the husband by agreement may bind his estate for the payment of alimony during the wife's lifetime. 27 C. J. S., Divorce, Sec. 240 pages 999, 1000.

Many of the cases dealing with the question both with respect to an award of alimony and one for the support of children, turn upon statutory provisions and the language of the particular decree.

From the foregoing authorities, the general rule which seems to be supported by the weight of authority is stated as follows: in the absence of an inhibitory statute, a provision for the support and maintenance of children

awarded in connection with the granting of an absolute divorce, does not *necessarily* terminate with the death of the father, and whether it does so depends upon the language of the decree. 27 C. J. S., Divorce, Sec. 323, page 1252; 17 Am. Jur. 536, Sec. 706.

▆▆ ▆▆ There is no statute in this state which forbids the adoption of this rule, and so far as we are advised there is no judicial pronouncement which would forbid its being administered by a court of equity under its broad powers respecting the welfare of infants. In addition to the inherent jurisdiction of an equity court and the father's common law liability to support the children, we have a statutory provision for an award for that purpose in connection with the dissolution of a marriage or a perpetual or temporary separation of the father and mother. This statute is found in Code Section 8446, which is in the following language: "Whether the marriage be dissolved absolutely, or a perpetual or temporary separation be decreed, the court may make an order and decree for the suitable support and maintenance of the complainant and her children, or any of them, by the husband, or out of his property, according to the nature of the case and the circumstances of the parties, the order or decree to remain in the court's control; and, on application of either party, the court may decree an increase or decrease of such allowance on cause being shown."

It will be observed that the court in the contemplated circumstances is authorized to provide suitable support and maintenance of the wife and her children, *or any of them,* either by the husband, *or out of his property,* according to the nature of the case and the circumstances of the party.

This statute fixes no limitation upon the duration of the obligation which the court is authorized to impose upon the father or his property. It is broad and comprehensive in terms, granting the courts wide latitude in making provision for the support of the wife and children. Giving to it the liberal construction which is due where the interests of minor children and also the interests of society are involved, we think it confers upon the court the authority, if the circumstances justify it, to charge the husband in a manner that will survive his death. It seems to us that this view is more in accord with natural justice and the obvious interest which society has in the enforcement of the obligation of every father to support his children during their minority in accordance with his means. There can be no insuperable difficulty from an administrative standpoint because if a contractual obligation entered into by the father to support his children can be so framed, as that it will survive the death of the parent, which seems to be held by all of the authorities, then so can a decree to the same effect rendered by a court having jurisdiction of the subject matter and of the parties. Cf. Miller v. Miller, 64 Me. 484, and Hood v. Hood, 138 Md. 355, 113 A. 899, 15 A. L. R. 774. The rule recognizes that however regrettable it may be, human nature being what it is, a father in some cases is not kindly disposed toward the children of whose custody he has been deprived, especially when he has married again and had children by his second wife, and moreover that he sometimes manifests this attitude when he comes to dispose of his property. Under it, the question will be left to the discretion of a court of equity whose particular business it is to guard the interest of minor children brought before it, in the light of the public policy of the state. The inherent nature of the situation contemplated

and the general rule deeply ingrained in our system that ordinarily a man has a right to dispose of his property as he pleases, subject only to the positive prohibitions of the law, require that the jurisdiction be exercised with caution, and its administration should take into consideration the particular circumstances of the case, including among other factors of course, the possibility that from hostility to the mother or some other causes the children might be disinherited by the father and left to be supported by the mother without any aid from his estate.

It is of course to be expected also that the court will retain control of all aspects of the award so that it may be modified in any respect required by a change in the condition of the parties or any of them.

The rule suggested finds at least implied, if somewhat negative support in the case of Brandon v. Brandon, 175 Tenn. 463, 135 S. W. (2d) 929, 930, wherein the court was dealing with the analogous question of whether an award of alimony in the form of monthly payments to a wife was binding upon the estate of the husband after his death. It was held that under the terms of the decree awarding the alimony, the liability did not survive the death of the husband, but the language of the court and especially the authorities cited clearly imply the view that by use of appropriate terms a decree may prevent the obligation being terminated by the death of the husband. Thus, after citing authorities supporting this view and holding that there was no such provision in the decree in that case, the court said: ''The decree is plain and unambiguous and it is not open to the construction that the monthly payments for the support of Mrs. Brandon and her children . . . were to bind the estate of D. G. Brandon and continue, after his death, as long as Mrs. Brandon shall live.''

But holding, as we are disposed to do, that a court administering equitable principles and having the requisite jurisdiction of the parties and subject matter, may, if the circumstances justify, also provide for the support of minor children in a manner that will be binding upon the estate of the father after his death, it is obvious that whether this can be said to have been done in a particular case must depend upon the language of the decree. In the present case the decree merely provided that the husband should pay monthly the sum of $25 each for the support and maintenance of two of the children by his former marriage, and that should there be a change in the status of the third child who was then living with his grandmother, he should pay the same amount for him. There is no language in the decree which would warrant the construction that it was intended to charge the estate of the father after his death.

Moreover, there are no circumstances disclosed by the record which would make it proper for a court to charge the estate of the deceased father with the support of the children of the former marriage. The father died intestate. With respect to his estate, those children stand upon an equal footing with the child of the second marriage. To allow them $25 per month out of the estate in addition to the share they otherwise take would be to give them an unjustified advantage over the other child.

It follows that a disallowance of the claim against the estate was correct.

The result is that the decree of the probate court will be modified so as to make it accord with the views herein expressed, and the case is remanded to that court for such further proceedings as may be necessary and consistent with this opinion.

In the circumstances we think it proper to direct that the costs of the proceeding, including the costs of the appeal, be paid out of the estate of the deceased.

It is proper to say that the guardian ad litem is to be commended for the ability and diligence he has displayed in his representation of the minors.

Baptist and Swepston, JJ., concur.