𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

PRATHER V. COMMONWEALTH.

July 19th, 1888.

1. CRIMINAL PROCEEDINGS—*New trial.*—On motion to set aside a verdict
   of conviction, and award a new trial in a criminal case, the sole question
   is, is the evidence plainly insufficient to support the verdict?

2. IDEM—*Circumstantial evidence—Reasonable doubt.*—To warrant convic-
   tion, every fact necessary to establish guilt must be proved beyond a
   reasonable doubt, especially when sought upon circumstantial evidence
   alone, which is always acted on with the utmost caution.

3. IDEM—*Case at bar.*—In this case the evidence, which was wholly circum-
   stantial;

HELD:
   Insufficient to support the verdict of guilty.

Error to judgment of circuit court of Franklin county, ren-
dered November 1st, 1887, affirming judgment of county court
of said county; rendered July 6th, 1887, whereby the plaintiff
in error was sentenced to confinement in the State penitentiary
for the term of two years, in accordance with the verdict of the
jury by which he was tried on an indictment against him jointly
with one Nick Sparks for housebreaking with intent to steal.

The indictment charges that the defendants, Prather and
Sparks, on the 7th of March, 1887, in the night-time of the said
day, a certain mill-house, not adjoining to or occupied with the
dwelling-house of John H. Payne, situate in the said county,
feloniously did break and enter, with intent the goods and chat-
tels of the said . Payne, in the said mill-house then and there
being, feloniously to steal, take, and carry away; and one-half

bushel of meal and one bushel of chop, of the value of one dollar and fifty cents, the property of the said Payne, in the said mill-house then and there being, feloniously did take, steal, and carry away, etc.

At the trial the prisoner, who was tried separately, was found guilty by the jury and his term of confinement in the penitentiary fixed at two years. He therefore moved the court for a new trial on the ground that the verdict was contrary to the evidence, but the motion was overruled and judgment pronounced in accordance with the verdict. And this judgment having been afterwards affirmed, on a writ of error, by the circuit court of Franklin county, a writ of error was awarded by one of the judges of this court.

*Hughes Dillard*, for the plaintiff in error.

*Attorney General R. A. Ayers*, for the Commonwealth.

LEWIS, P. (after stating the case), delivered the opinion of the court.

The single question here is, whether the conviction of the prisoner is warranted by the evidence. In other words, Is the evidence plainly insufficient to support the verdict? For unless it is, the judgment must be affirmed, according to the familiar rule established by a long line of decisions of this court. *Hill's Case*, 2 Gratt. 594; *Pryor's Case*, 27 Id. 1009; *Coleman's Case*, 84 Va. 1.

No evidence appears to have been offered at the trial by the prisoner; and that for the Commonwealth, as certified in the bill of exceptions, is substantially as follows:

The witness, Payne, testifies that on the day mentioned in the indictment, in the night-time, his mill was broken into, and about one bushel of corn-meal and the same quantity of chop was stolen therefrom; that the meal was in a sack which had a

rent in it about six inches long ; that the sack was emptied by
the thief and left lying on the mill floor ; that the mill is situ-
ated directly on the public highway, and that the next morning
after the offense was committed, he, the witness, observed two
tracks in the road—the one a small track, the other a larger
one—coming to and going from the mill ; that these tracks could
be easily seen from the fact that there had been a rain the even-
ing before, and they were made after the rain; that when dis-
covered, they were the only tracks to be seen in the road, and
that he followed them from the mill to the prisoner's house, a
distance of about two and a half miles, beyond which point he
could discover no tracks of any sort. The left shoe, he says,
that made the larger track, had a piece of leather on the heel,
covering about one-half of the heel, the edge of which was cut
square and was not shaved down, so that it made a plain impres-
sion on the ground. When the witness arrived at the prisoner's
house, he found no one there but a little girl, a step-daughter
of the prisoner, who told him the prisoner was at the tobacco-
house, near by, stripping tobacco. He then departed, but within
less than an hour returned, with several of the neighbors, when
he found the prisoner and Nick Sparks, who lives with the
prisoner, at home. He called them out and told them he had
lost some meal, and had followed two tracks from his mill to
their house, which he believed to be theirs, and that if they
would go back and make tracks, and the tracks did not corres-
pond with those made at the mill, he would turn them loose.
To this Sparks assented, but the prisoner refused to do so. The
witness then ordered the prisoner to hold up his left foot. He
held up his right foot. The witness said that would not do,
whereupon he held up his left foot, when the witness discovered
that there was a piece of leather on the heel of the shoe, cover-
ing about one half the heel, and corresponding in size and shape
with the impression made on the ground by the above mentioned
half heel-tap. The witness also measured the prisoner's shoe,
but does not say it corresponded (any further than the heel-tap

thereon) with any of the tracks, or that he measured the tracks, or that any of the tracks were made by the prisoner.

The next witness, Blunt, testifies that he was present with Payne at the prisoner's house, and heard Payne propose to the prisoner to settle the matter, if he would pay for the meal, and that the latter replied he would rather pay for it than to have any trouble in court. The witness also describes the prisoner's heel-tap as the witness, Payne, does.

The third and last witness is George Chism, the miller, who testifies that, a few days before the mill was broken into, the prisoner went to the mill to get a bushel of corn that he had bought, and that while at the mill, the witness called his attention to the bag of meal afterwards stolen, and asked him if he could carry it. The prisoner answered he could, and the witness then said, " well, when you come after it, bring a bag, for that one has a big hole in it." This remark was made in jest, and no other fact is testified to by the witness.

This evidence, which is all the evidence in the case, is not sufficient to warrant the verdict. The principal point relied on by the Commonwealth to connect the prisoner with the offense is, that the larger tracks found in the road, leading to and from the mill, were made by him. But however probable it may be, in view of the correspondence between the heel-tap on the prisoner's left shoe and the impression made by a heel-tap on the ground, which is described in the record, that the tracks were his, the fact is not established with the clearness and certainty required by the law in such a case. There was no comparison of the measurement of his shoe with the tracks, and notwithstanding the correspondence between the heel-tap on the shoe and the impression on the ground just mentioned, his shoes and the tracks may have differed widely; nor can we say, upon this record, that they did not. To warrant the conviction of a person accused of crime, every fact necessary to establish his guilt must be proved beyond a reasonable doubt; and especially is this so where, as here, a conviction is sought upon cir-

cumstantial evidence alone, which is always to be acted on with the utmost caution. It is not sufficient, therefore, that the evidence creates a suspicion of guilt. The accused is entitled to an acquittal, unless the fact of guilt is proven to the actual exclusion of every reasonable hypothesis of his innocence. And here the evidence is not inconsistent with such hypothesis.

The additional circumstances relied on by the Commonwealth, namely, that the prisoner, when told to hold up his left foot, first held up his right foot, and when asked to make tracks to be compared with those found in the road, refused to do so, and his subsequent declaration that he would rather pay for the meal than to have any trouble in court—while they increase suspicion against him, do not constitute such proof of guilt as to warrant his conviction of a felony. Nor is much weight to be attached to the jesting remark of the witness, Chism, made to the prisoner before the offense was committed. The fact that when the meal was stolen it was emptied from the torn bag in which it was, is, at most, but a slight circumstance in the case, especially in view of the fact that a quantity of chop was stolen at the same time, which, while it shows that the thief went prepared to carry away the fruits of his crime, lessens the presumption that the condition of the bag was previously known to him.

Besides, there is no proof that any meal was found in the possession of the prisoner, much less that the articles stolen were traced to his possession and identified; so that the case of the Commonwealth rests upon little more than mere conjecture. In short, to use the language of the court, speaking by Moncure, P., in *Johnson's Case*, 29 Gratt. 796, the circumstances proved, " taken singly or all together, while they create a suspicion of guilt, are yet inconclusive and wholly insufficient to prove such guilt. They are consistent with the fact of guilt, but are also consistent with the fact of innocence. If they be not at least as consistent with the fact of innocence as with the fact of guilt, they certainly do not amount to such degree of proof as to connect the accused with the offense and to warrant his conviction

thereof"; for the rule in such cases is, that where the evidence establishes only some finite probability in favor of the hypothesis of guilt, such evidence cannot amount to proof, however great the probability may be. See also *Jones* v. *Commonwealth*, 17 Gratt. 563; *Pryor* v. *Commonwealth*, 27 Id. 1009; *Taliaferro* v. *Commonwealth*, 77 Va. 411.

The judgment must therefore be reversed, and the case remanded to the county court for a new trial.

LACY, J., dissented.

JUDGMENT REVERSED.