## Richmond

CLARENCE ROBERT HALL v. COMMONWEALTH OF VIRGINIA.

January 21, 1957.

Record No. 4638.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Whittle, JJ.

The opinion states the case.

*Robert W. Spessard,* for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General (J. Lindsay Almond, Jr., Attorney General,* on brief) for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Clarence Robert Hall was arrested on February 13, 1956, upon a warrant charging him with breaking and entering, in the nighttime of December 24, 1955, a certain storehouse known as the Owen-Weaver Sporting Goods Store, in the City of Roanoke, with intent to commit larceny, and stealing therefrom certain personal property consisting of guns and ammunition. At the April term of the

Hustings Court of the above city, he was indicted for that offense, along with William Ray Fout, Jr., and Jennings Coffey.

Hall elected to be tried separately, and his trial was set for March 27, 1956. A continuance was then granted to April 23rd, 1956, because of the illness of a witness for the defense. On April 23rd, a further continuance was requested because of the absence of the sick witness. The request was denied, and Hall duly objected and excepted, his exception constituting the ground for one of his assignments of error. The Commonwealth's Attorney filed a bill of particulars, fixing the time of the offense as between 9:30 p. m. on December 24, 1955, and 1:30 a. m. on December 25, 1955, and the trial proceeded.

The jury found Hall guilty as charged in the indictment, and fixed his punishment at seven years in the penitentiary. A motion to set aside the verdict as contrary to the law and the evidence, for errors of the trial court in refusing to grant a continuance of the trial date, for the granting and refusal of certain instructions, and for denying a motion for a new trial upon the ground of after-discovered evidence, was overruled. Judgment was entered in accordance with the verdict of the jury, and the matter is now before us on a writ of error awarded to the defendant.

As we view the case, the decisive question to be considered is whether the evidence was sufficient to support the verdict of the jury.

It appears from the evidence that on the night of December 24, 1955, the Owen-Weaver Sporting Goods Store, located on Melrose Avenue, N. W., in the City of Roanoke, was broken into and $2,-684.89 worth of guns and ammunition and two cameras were stolen. The stolen guns bore serial numbers.

On February 11, 1956, about 3:00 p. m., S. M. Lynch, Deputy Sheriff of Roanoke County, while on highway patrol duty, heard some loud voices in a wooded area in Roanoke County, about three miles south of the City of Roanoke. Over the objection of the defendant, he was allowed to testify that he went into the wooded area to investigate; that he found a 1949 Mercury automobile belonging to William Ray Fout, Jr.; that he saw two white men in the woods,—one of them Fout—approaching the rear of the Mercury automobile, and Jennings Coffey about fifteen feet behind Fout with a .22 rifle in his hand; that when he began to question Fout, Coffey threw the rifle to the ground, reached into his pockets, pulled out two "short

guns," and also threw them to the ground; that he arrested both men and turned them over to the Roanoke City Police; and that on the trip to the city, each refused to tell him where they got the guns.

Frank Scales, a young Negro, an inmate of the city jail, and recently released from a prison in Bland County, testified that he was a resident of Pulaski; that he had, shortly before Christmas, 1955, ridden into Roanoke three times with Abie Hasson in the latter's blue Oldsmobile; that on the first trip around December 21, 1955, he and Hasson were accompanied by Hall; that when they arrived at the "market" in Roanoke, Hall there met his wife and he and Hasson left him there; that on the second trip on the following day, he, Hall, and Jennings Coffey rode with Hasson; that on their way to Roanoke they stopped in Salem about forty or forty-five minutes, where Hasson got out and obtained an overcoat; that on arriving in Roanoke they drove into a driveway between the sporting goods store and a "whiskey store;" that Hall there got out of the car, walked to the front of the sporting goods store, returned after an absence of five minutes, and "mentioned a window in the back, and said the job was cased;" that they then went back to Salem, and thence about seven miles beyond Salem where Hasson got out of the car; that Hall said he was looking for Fout, and he and Hall then drove to a place called "Casa Loma;" that Hall went into that place and, upon his return to the car, said: "I found it out this time;" that they left there, and next stopped in front of a white house, where Hall got out of the car and went into the house and stayed about forty-five minutes while he, Scales, remained in the car; that when Hall returned to the car, "He was talking about somebody; he was cussing, and said something about a deal going to be pulled just like that," and talked all the way back to Salem, where they picked up Hasson and returned to Pulaski; that on or about the 23rd of December, 1955, he, Hall, Coffey and Hasson again went to Roanoke; that he, the witness, got out at Henry Street, and Hall said that he had to see someone about his driver's permit; that his companions "picked him up on the bridge" about two or three hours later, and they returned to Pulaski; that on the return trip, Hall "mentioned something about some tools and some rollers;" saying that he needed "three rollers and a bar;" and that there was some mention about serial numbers on guns between the witness and Hall when they went to "this fellow's house."

Scales further said that a few days after Christmas, he saw Jennings Coffey with about fifteen guns in the back end of his car; that

he heard a discussion between Coffey and a man, whom the witness did not know; and that later in a barber shop, where he had formerly worked, Hall came in and he heard Hall mention to a barber something about guns and say "he had a deal;" that the two men were "talking about uniform match, or something—shooting match arranged" and that about thirty guns were to be delivered; that the barber gave Hall some money and said he would give him more later; and that he borrowed a dollar from Hall and when Hall took the money out of his pocket, he "saw around about six or seven twenties, some ones."

C. W. Weaver, one of the owners of the sporting goods store, testified that the guns recovered by Deputy Sheriff Lynch were among those stolen on the night of December 24th; that he had seen Hall in his store on Wednesday, Thursday and Saturday before Christmas; that he was dressed in boots, riding pants, and a leather jacket, and remained between five and ten minutes each time; that on the first occasion he asked for an article which the store did not carry; that on another occasion he asked to use the rest room, but after being specifically directed to the left door in the rear, with the notice upon it, Hall went to the right door which led to the back of the store, and stayed there for five minutes before returning.

At the conclusion of the Commonwealth's evidence, the trial court overruled a motion to strike on the ground that the Commonwealth had not made out a case.

The defendant then presented five witnesses, who testified that on the night of December 24, 1955, between 9:30 p. m. and 1:30 a. m. the following morning, the defendant had been present in Pulaski, and had spent the night at Maple Inn, a tourist lodge. There was further evidence that defendant did not own riding pants or riding boots, and never wore them, and that the automobile described by Scales as the one in which he made the three trips to Roanoke had been wrecked on December 15th, and had remained in a garage and repair shop until February, 1956.

There was also evidence by a police officer that an hour and ten minutes were required to make an automobile trip from the center of Pulaski to the Court House in the City of Roanoke. The defendant did not testify.

On May 7, 1956, the defendant moved the court to set aside the verdict of the jury and the judgment entered thereon on April 23rd, upon the grounds of after-discovered evidence. He alleged that in a

subsequent case against Abie Hasson involving the crime of December 24, 1955, Frank Scales had testified that he was mistaken about Jennings Coffey being present on the aforementioned trips to Roanoke. The evidence of Scales in the Hasson case was presented, and it disclosed that although Scales testified on cross-examination that Coffey was not present, he later returned to the stand, and reaffirmed that Coffey was present, explaining that threats made against him in jail caused him to change his testimony. We agree with the trial court that, under the circumstances, there was no basis for the granting of a new trial upon such evidence. *Powell* v. *Commonwealth*, 133 Va. 741, 112 S. E. 657; *Lewis* v. *Commonwealth*, 193 Va. 612, 625, 70 S. E. 2d 293.

The Commonwealth contends that the verdict and judgment of the trial court should be affirmed; that the actions and statements of the defendant prior to December 25th were inconsistent with his innocence and consistent with his guilt. This may be true, but without any evidence, tending to show that the defendant broke and entered the building, described in the indictment, with the intent to commit larceny therein, or was present aiding and abetting another or others, with such intent, or that he ever had any possession of or claimed a property interest in the stolen goods, the statements and actions relied on are insufficient to prove his guilt of the offense charged beyond a reasonable doubt.

The testimony of Scales, as recorded, upon which the Commonwealth relies, is more or less indefinite, cloudy, and confusing in some particulars. It is difficult to ascertain just what the witness knew. None of the stolen property was traced to the possession of Hall. There was nothing to show how or where he got the money referred to by Scales. The series of related actions and statements merely point the finger of suspicion to the defendant.

The only testimony tending to show participation in the offense by Hall is that prior to the commission of the crime, he looked over the premises involved, said something about his need for some rollers and a bar; and made some statements about a deal about to be "pulled off," and that after its commission he again spoke of a "deal," and talked about guns and their use. There is absolutely nothing to connect him with the possession of the guns found in the possession of Fout and Coffey. The evidence is wholly circumstantial. It raises a suspicion of the defendant's participation in the crime in some way; but it is insufficient to sustain the verdict of the jury, that he broke or broke

and entered into the storehouse in question, with an intent to commit larceny, and committed larceny therein.

In *Bundick* v. *Commonwealth*, 97 Va. 783, 785, 34 S. E. 454, this is said:

"To warrant the conviction of a person accused of crime, every fact necessary to establish his guilt must be proved beyond a reasonable doubt; and especially is this so where, as here, a conviction is sought upon circumstantial evidence alone, which is always to be acted on with the utmost caution. It is not sufficient, therefore, that the evidence creates a suspicion of guilt. The accused is entitled to an acquittal, unless the fact of guilt is proven to the actual exclusion of every reasonable hypothesis of his innocence. *Prather's Case*, 85 Va. 125-6; *Taliaferro's Case*, 77 Va. 411; and *Pryor's Case*, 27 Gratt. 1009."

See also *Branch* v. *Commonwealth*, 100 Va. 837, 840, 41 S. E. 862, and the recent case of *Leebrick* v. *Commonwealth*, 198 Va. 365, 94 S. E. 2d 212.

In view of our conclusion that the evidence merely raises a strong suspicion of defendant's guilt; but fails to establish such guilt beyond a reasonable doubt, it is unnecessary to discuss any of the other assignments of error.

The judgment of the trial court is reversed, the verdict set aside, and the case remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*