# Richmond

F. H. MORRIS v. WILLA SELMADALE HOUGH MORRIS HENRY AND
PEGGY ANN MORRIS.

April 21, 1952.

Record No. 3920.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*A. Garland Williams,* for the appellant.

*J. Sloan Kuykendall* and *Henry H. Whiting,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This appeal presents for decision the question whether the provision in a divorce decree requiring the father to support and maintain the infant child of the marriage continued in effect after the death of the father. The question has not heretofore been decided by this court and the holdings in other jurisdictions are in conflict.

On April 14, 1932, the Circuit Court of Clarke county granted to Willa Hough Morris, the complainant in that suit, an absolute divorce from her husband, F. Broaddus Morris, on the ground of his adultery. The decree ordered that the defendant pay to the complainant "as alimony and support for the infant daughter, Peggy Ann Morris, until a further order of this Court," $40 a month; gave permanent custody of the child to the complainant and terminated all property rights of each in the property of the other. The decree further provided that an injunction previously granted, restraining the defendant from disposing of his property, be continued in force; that if the defendant failed to make the payments required by the decree, the complainant should have the right to apply to the court for such order as might be necessary to subject the defendant's property "held under the said injunction;" and the cause was retained on the docket for such further orders relative to alimony and support as the court should consider necessary and proper.

Notwithstanding the provisions of said decree, F. Broaddus Morris, on June 1, 1932, conveyed his real estate to his father, F. H. Morris, the appellant here. On December 17, 1932, F. Broaddus Morris died intestate. On June 17, 1938, Mrs. Morris

married again and is now Mrs. Henry. The daughter became twenty-one years old on August 3, 1950.

F. H. Morris brought this suit asking the court to decree that the real estate conveyed to him by his son was not subject to any lien or encumbrance by virtue of the divorce decree of 1932; or if that decree constituted a lien, then that the amount thereof be determined. Mrs. Henry and the daughter filed an answer and the issue was submitted as to whether the provisions of the divorce decree for alimony and support continued beyond the death of F. Broaddus Morris.

By the decree appealed from the court held that the estate of F. Broaddus Morris was not liable to Mrs. Henry for alimony after December 17, 1932, the date of his death. No objection is made to that holding; it is not involved here and we express no opinion on that feature of the case. But the court further held that the part of the decree which applied only to the support of the infant daughter would survive the death of the father until the daughter became self-supporting or twenty-one years old, whichever happened first; and that such part of the $40 a month as the court should, after hearing evidence, determine to have been for the support of the daughter should be a charge against the estate of F. Broaddus Morris. That holding is the error assigned.

Counsel for F. H. Morris, the appellant, conceded in the argument that the appellant had notice of the provisions of the divorce decree and was not a purchaser for value without notice.

The questions for decision are, first, whether the court had the power to require that the payments for the support of the infant daughter should continue after the death of the father; and, second, whether it did so require by the decree of April, 1932.

To the first question a minority of the courts have answered no.

In *Robinson* v. *Robinson*, 131 W. Va. 160; 50 S. E. (2d) 455, the divorce decree ordered that the defendant father pay to the complainant mother $45 a month for the support and maintenance of two of their children "until the further order of this court." The court held that the requirement ended with the death of the father. The opinion noted that the decisions of other courts were in sharp conflict and cited a number of cases and texts asserting the opposite view. For authority the de-

cision was rested on *Blades* v. *Szatai*, 151 Md. 644, 135 A. 841, 50 A. L. R. 232; *Barry* v. *Sparks*, 306 Mass. 80, 27 N. E. (2d) 728, 128 A. L. R. 983; *Guinta* v. *Lo Re*, 159 Fla. 448, 31 So. (2d) 704; *Carey* v. *Carey*, 163 Tenn. (10 Smith) 486, 43 S. W. (2d) 498; *Mansfield* v. *Hill*, 56 Ore. 400, 107 P. 471, 108 P. 1007.[1]

The court said it adopted the principles laid down in *Blades* v. *Szatai, supra,* and that to hold otherwise would make it possible to change the course of descent and distribution in cases of intestacy, interfere with the right to discriminate among children and other heirs by will, and disturb the rights of creditors. It was said that a decree against the father for the support of his children during their minority adds nothing to his common law obligation already exsting, which ceases at the death of the father "and it does not seem to us logical that an order of a court for support of children, based as it must be on his common law obligation, should be given the force and effect of a

---

[1] In *Barry* v. *Sparks* (Mass.), *supra,* the divorce was granted to the father and custody of the child given to the wife's mother, with provision that the father should pay to his wife $11 a week for the support of herself and child until further order of the court. The court held that on the death of the mother the decree had no further continuing effect, "at least when, as here, the decree makes no provision for its continuance beyond the lives of the parents" (128 A. L. R. at p. 987); that the rights of the father after the death of the mother were those of a surviving parent, unaffected by the divorce decree; that when the wife died there was no longer any effective decree of the court depriving the father of the custody of the child and relieving him of the common law duty to support it.

In *Carey* v. *Carey* (Tenn.), *supra,* there was no decree against the father for the support of the child. The court said it had found no case "which would extend the obligation for support beyond the death of the father when not resting upon contract or definite adjudication." (50 S. E. (2d) at p. 471). In the later case of *In re Moore's Estate* (1949), 34 Tenn. App. 131, 234 S. W. (2d) 847, cert. den. by Tenn. S. Ct., it was specifically held that under the Tennessee statute, the court had the power "if the circumstances justify it, to charge the husband in a manner that will survive his death."

In *Guinta* v. *Lo Re* (Fla.), *supra,* the decree ordered the father to pay to the mother $10 a week for the maintenance of their child, saying nothing as to duration. A majority of the court held, without discussion or citation of authority, that the obligation terminated with the death of the father. One Justice and the Chief Justice dissented, holding that the obligation should not be discharged by death, "if the necessities of the children continue, and the estate of the father is sufficient to take care for their needs." (31 So. (2d) 706).

*Mansfield* v. *Hill* (Ore.), *supra,* holds that the liability does not terminate at death, but is overruled by *Prime* v. *Prime*, 172 Ore. 34; 139 P. (2d) 550.

Other cases holding, for reasons stated therein, that the obligation did not survive are: *Gardine* v. *Cottey*, 360 Mo. 681, 230 S. W. (2d) 731, 18 A. L. R. (2d) 1100; *Platt* v. *Davies*, 82 Ohio App. 182, 77 N. E. (2d) 486; *Rice* v. *Andrews*, 127 Misc. Rep. 826, 217 N. Y. S. 528; *Carry* v. *Johnson* (Memo. Op.), 295 N. Y. 857, 67 N. E. (2d) 260.

judgment for payment of money, and creating a lien for money not due at his death." 50 S. E. (2d) at p. 460.

Judge Hammond dissented vigorously on the ground that the decision overruled prior cases, particularly *Goff* v. *Goff,* 60 W. Va. 9, 53 S. E. 769, 9 Ann. Cas. 1083 (afterwards approved in *Isaacs* v. *Isaacs,* 117 Va. 730, 86 S. E. 105, L. R. A. 1916 B, 648) ; and *Hale* v. *Hale,* 108 W. Va. 337, 150 S. E. 748; and further because the decision "is not based on sound reason and is contrary to the view expressed by recognized text writers and the clearly established weight of judicial authority in other jurisdictions," (50 S. E. (2d) at p. 465), many of which he then cites and quotes. See also criticism in 35 Va. Law Rev. 482 and 24 Notre Dame Lawyer 563.

In *Blades* v. *Szatai* (Md.), *supra,* the divorce was granted to the father, who was not at fault, but the custody of the only child was given to the mother, with the provision that the father pay her $3 a week for his support until he was twenty-one or became self-supporting. In holding that the decree did not survive the father's death, the court said: "Without a divorce, the father is only bound to support his minor children so long as he lives, and it would seem to be illogical to hold that, by reason of a divorce decreed upon a bill filed by the father, he being in no wise at fault, a child should be in a better position in respect to his father's estate than he would be without the decree for divorce." 50 A. L. R. at p. 236. The Maryland statute provided that in divorce cases the court should have power to direct "who shall have the guardianship and custody of the children, and be charged with their support and maintenance." 50 A. L. R. at p. 234. The court said that the language used by the lawmakers "indicates that they had in mind and were dealing with living individuals, and not with estates of decedents." 50 A. L. R. at p. 237.

There was a dissent in that case on the ground that the judicial authority in a divorce case to provide for the support of a child during its minority should be determined by the language of the statute conferring the jurisdiction rather than by the rule of the common law, and adding, "If the father had been required by the decree to give bond for the payments therein specified, the liability thus incurred would clearly be an indebtedness with which his estate would be chargeable." 50 A. L. R. at p. 240.

On the other hand, the text writers and a decided majority of the adjudicated cases hold that under modern conditions the liability of the father is not necessarily terminated by his death, and that there is no sound reason, unless prohibited by statute, why his estate should not be charged with his obligation to support his minor children.[2]

The leading case supporting this view, and the earliest decision on the subject, is *Miller* v. *Miller* (1874), 64 Me. 484. There the decree in a divorce suit gave the mother the custody of the minor children, provided that the father pay her a sum quarterly for their support, "to continue in force till the further order of court," and the question was whether the obligation was discharged by the father's death. The court held it was not, saying, in part:

"* * * The statute conferring jurisdiction in such cases is very comprehensive. It authorizes the court to make such a decree as the circumstances require. If, from hostility to the mother, or other cause, there is danger that the father will disinherit his children, and thus leave them to be supported by their mother without any aid from his estate, a decree may very properly be made for their support that shall continue in force after his decease, or until they are of sufficient age to provide for themselves; or at least till the further order of court. And if there is danger that the father will squander his property, or convey it away, so that none will be left for the decree to operate upon, he may very properly be required to give security.

"We do not controvert the position of the learned counsel for the defendant that, by the rules of the common law, a father is under no legal obligation to provide for the support of his children after his death. It may be that he can disinherit them

[2] 27 C. J. S., Divorce, § 323 c., p. 1252; 17 Am. Jur., Divorce and Separation, § 706, p. 536; 2 Nelson, Divorce and Annulment, (2d) ed., ch. 14, § 14.91; 2 Schouler, Marriage, &c., 6th ed., § 1916, p. 2057; Schouler Divorce Manual, § 347 (c), p. 506; Annotations, 48 L. R. A. (N. S.) 429, 50 A. L. R. 241, 18 A. L. R. (2d) 1126; 35 Va. Law Rev. 482; 24 Notre Dame Law. 563; 62 Harv. Law Rev. 1079; 25 Mich. Law Rev. 555; 19 Miss. Law Jour. 249; *Miller* v. *Miller,* 64 Me. 484; *Stone v. Bayley,* 75 Wash. 184, 134 P. 820, 48 L. R. A. (N. S.) 429; *Cissna* v. *Beaton,* 2 Wash. (2d) 491, 98 P. (2d) 651; *Edelman* v. *Edelman,* 65 Wyo. 271, 199 P. (2d) 840, 203 P. (2d) 952; *In re Moore's Estate,* supra, 34 Tenn. App. 131, 234 S. W. (2d) 847; *Smith* v. *Smith,* 200 Cal. 654, 254 P. 567; *Newman* v. *Burwell,* 216 Cal. 608, 15 P. (2d) 511; *Murphy* v. *Moyle,* 17 Utah 113, 53 P. 1010; *Smith* v. *Funk,* 141 Okla. 188, 284 P. 638; *Creyts* v. *Creyts,* 143 Mich. 375, 106 N. W. 1111; *West* v. *West,* 241 Mich. 679, 217 N. W. 924; *Garber* v. *Robitshek,* 226 Minn. 398, 33 N. W. (2d) 30.

and leave them to be supported by others. 'I am surprised,' said Lord Alvanley, 'that this should be the law of any country, but I fear it is the law of England.' 2 Kent's Com., 10th ed., 225.

"But we think such can only be the law when the family relations remain intact, and when there is no great danger that such an arbitrary power will be exercised. We think that when, through the fault of the father, his family is broken up, and his children become in one sense the wards of the court, this power is taken from him, and he may be compelled, if of sufficient ability, to give security for the support of his children that shall be binding upon his estate." 64 Me. at p. 487.

In *Murphy* v. *Moyle, supra,* 17 Utah 113, 53 P. 1010, the decree provided that the husband pay the wife $12 per month permanent alimony and support for the minor children until they became of age, with a lien on certain premises as security. The Utah statute provided that upon decreeing a divorce the court should make such order in relation to the maintenance of the wife and of the children awarded to her "as is just and equitable." The court held that the decree was authorized by the statute and was binding on the estate of the father after his death, saying, "for it is the solemn duty of every husband and father to support his wife during life, and his children during their minority, suitably to their station in life, and, if he fail to do so, every principle of justice demands that they be thus supported out of his estate." 53 P. at p. 1012.

In *Smith* v. *Smith, supra,* 200 Cal. 654, 254 P. 567, holding that an order providing security for payment of money to support a minor child of divorce was binding on the father's estate, the court said, "The purpose of the order was to maintain the child during her minority and to compel such maintenance by the father. The necessity for the support of the minor is the same, whether the father be alive or dead. Having made provision for the support of the minor, which is at least partially adequate for her maintenance during her minority, is there any reason whatever why this support should cease on the death of the father, leaving property properly applicable for the payment of said support? No reason has been suggested to us and we know of none. Surely no obligation can exceed in importance that which the father owes to his own offspring." 254 P. at p. 569.

In *Newman* v. *Burwell, supra,* 216 Cal. 608, 15 P. (2d) 511, the husband had been ordered by the decree of divorce, pursuant to a property settlement agreement, to pay his wife $50 a

month for the support and maintenance of their minor child "until the further order of court." The wife brought suit to collect from the deceased husband's estate installments accrued before his death and accrued and to accrue after his death. The court cited some of the cases hereinabove referred to as holding that the liability of the father might survive, and pointed out that in some of them the father's obligation was to pay during the minority of the child, and in others a lien was imposed to secure payment; but held that in absence of a limitation to the life of the father, the obligation survived his death, and that "a distinction founded in the giving or requiring of security can rest on no sound basis, inasmuch as the provision for security is a difference merely in circumstance, and not in principle." 15 P. (2d) at p. 513.

Responding to the argument that the conclusion might destroy the power of testamentary disposition, the court said that the same argument could be applied to any secured obligation, and that a different conclusion might result in some cases in the minor child becoming a public charge, adding: "It would seem that the well-being of the child is at least as important as the father's power of testamentary disposition." 15 P. (2d) at p. 513.

In *Creyts* v. *Creyts, supra,* 143 Mich. 375, 106 N. W. 1111, the decree of divorce required the husband to pay to the wife for the support of their infant child $10 a month "until the further order of the court." In holding it was not discharged by death, the court said:

"* * * Under our statute, which authorizes the court to make the decree a charge upon the property, and to change and alter the decree from time to time, in the interests of justice (Comp. Laws, §§ 8640, 8641), we are of the opinion that, where the rights of bona fide holders have not intervened, the court may alter, amend, enlarge, or diminish the decree, as the necessities of the one and the ability of the other party may require, and that it may protect the child by making the decree a charge upon property to prevent its dissipation, and that the power is not determined by the death of the husband." 106 N. W. at 1112.

In that case both parties indicated a desire that the divorce decree be modified to fix a period for the continuation of the payments, to determine the present value and provide for immediate payment, which the court did "rather than to keep the

estate open and defer distribution.'' 106 N. W. at 1112. See also *West* v. *West, supra,* 241 Mich. 679, 217 N. W. 924.

In *Garber* v. *Robitshek, supra,* 226 Minn. 398, 33 N. W. (2d) 30, the husband was ordered to pay the wife as ''alimony and support money for herself and the four minor children,'' $100 per month ''until the further order of the court,'' which should be a lien against his real estate. The court held that the decree manifested an intention that the liabilty of the husband should survive his death and that ''Where an order or judgment is to be in effect until the further order of the court, there is in effect a reservation of jurisdiction to enter a further and final order or judgment. The reserved jurisdiction does not abate and is not defeated in a divorce case by the death of the husband.'' 33 N. W. (2d) at p. 34.

Looking to our own statutes we find no express or implied inhibition against the right of a court in a divorce suit to decree that liability for the support of minor children shall survive the death of the parent against whom it is decreed. Our statutes are broader and more comprehensive than those involved in most of the cases above referred to.

Section 20-107, Code 1950, provides *inter alia,* that upon decreeing a divorce ''the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children.'' In *Bailey* v. *Bailey,* 172 Va. 18, 22, 200 S. E. 622, 624, we said this ''statute is a remedial one and should be construed liberally in order to effectuate the plain intention of the legislature to empower courts of equity to discharge the function of a guardian in the protection of the rights and interests of infant defendants.'' And in *Heninger* v. *Heninger,* 90 Va. 271, 275, 18 S. E. 193, 195, it was said that ''the evident purpose of the legislature was to give to the court the largest discretion in respect to the estate of the parties, and not to relieve the offending parent of any duty, moral, social, or otherwise.''

Section 20-108 provides that the court may on petition of either parent, or on its own motion, or on petition of any probation officer or superintendent of public welfare, revise and alter its decree, concerning the care, custody and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may

require. This statute expressly gives the court continuing jurisdiction to change or modify its decree in the respects stated. *Gloth* v. *Gloth*, 154 Va. 511, 153 S. E. 879, 71 A. L. R. 700; *Kern* v. *Lindsey*, 182 Va. 775, 30 S. E. (2d) 707.

Section 20-109 provides for changing provisions for alimony on the petition of "either party."

Section 8-386 (§ 6470, Code 1919) provides that every judgment for money shall be a lien on the real estate of the defendant in the judgment.

Section 8-343 provides, *inter alia*, that a decree or order requiring the payment of money shall have the effect of a judgment; and section 8-344 provides that persons entitled to the benefit of any decree or order requiring the payment of money shall be deemed judgment creditors.

In *Isaacs* v. *Isaacs, supra,* 117 Va. 730, 733, 86 S. E. 105, 106, L. R. A. 1916 B, 648, it was held "that a decree for alimony payable in monthly instalments during the lifetime of the beneficiary, constitutes a lien in her favor upon the husband's real estate from the date of such decree, not only for the instalments presently due but for those that shall fall due under such decree in the future." The court said that otherwise the provision for the wife could be easily defeated by the husband's selling and conveying his real estate, or by confessing a judgment in favor of a creditor large enough to render the decree for alimony worthless. In support of the holding the court cited *Goff* v. *Goff*, 60 W. Va. 9, 53 S. E. 769, 9 Ann. Cas. 1083 (referred to in the opinion and dissenting opinion in *Robinson* v. *Robinson, supra*), decided under a West Virginia statute practically identical with our section 8-386, *supra*. See also *Eaton* v. *Davis*, 165 Va. 313, 182 S. E. (2d) 229; *Ring* v. *Ring*, 185 Va. 269, 38 S. E. (2d) 471, 165 A. L. R. 1237.

Section 8-388, Code 1950 (enacted as an amendment to § 6470 of the 1919 Code by Acts 1944, ch. 243, p. 346), provides that in a decree for alimony payable in future installments the court may provide that such payments shall not be a lien on the real estate of the person liable, or may designate the real estate on which there shall be a lien, or may subsequently on petition release such lien whether accrued or to accrue.

Section 20-114 provides that the court may require the giving of a recognizance, with or without surety, to secure compliance with its decree for support, maintenance or alimony.

█ It thus clearly appears that the decree of April, 1932, directing the defendant in that suit to pay $40 a month for alimony and support of his infant daughter, became a lien upon the land he then owned and which he conveyed less than two months later to his father, the appellant on this appeal. We hold, in line with the majority, and, as we believe, the better reasoned cases, and in line with the spirit of our own statutes and decisions, that the lien so created, to the extent in this particular case that the amount thereof was for the benefit of the infant daughter, was intended to and did by said decree continue in effect after the death of her father, and until she became twenty-one years old or self-supporting as held by the trial court.

Such holding does not, we think, impinge upon the statutes of descent and distribution any more than does the payment of any other judgment against the father in favor of one of his children or of a third person. The right of inheritance does not exist until debts are paid. So also with the right to give or take by will. The property liable for the testator's debts is not in reality his to give until his debts are paid. Likewise, creditors of the father bear the same relation to the judgment in favor of the child as to other judgments.

To deny to a court of equity, sitting as a court of divorce, the power to make the estate of a parent liable for the support of infant children, would in some cases make that court helpless to discharge the function of a guardian in the protection of the rights and interests of infant children of divorce, which we said in the *Bailey Case* it was the purpose of the legislature to bring about. The provision for the children could be easily defeated by a disposal of all of the property of the parent or encumbering it with debt, or by other devices to avoid payment. The death of a father does not end the need of his infant children for food and shelter. The decree of a court requiring the father to provide for the wants of his children would be a futile thing if it could be defeated by a will leaving all of his property to somebody else. A court dealing with the health and happiness of infant children ought not to be that powerless. Possession of the power to bind the parent's estate need not and would not result in its being exercised in all cases. It should, of course, be used only when the necessities of the case and the ends of justice require.

The statutes referred to above give the court ample authority to deal with matters of custody and support if one or both of the parties to the divorce suit should die. If other children of either party would be injured, payments ordered by the decree may be adjusted. If settlement of the estate of the decedent would be too long postponed, methods of obviating that trouble are available. *Cf. Buchanan* v. *Buchanan*, 174 Va. 255, 273, 6 S. E. (2d) 612, 619; *Creyts* v. *Creyts, supra.*

The decree appealed from is

*Affirmed.*

MILLER, J., dissenting.