## Bethany C. Knowles v. Michael L. Thompson

[697 A.2d 335]

No. 96-057

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 4, 1997

Motion for Reargument Denied May 6, 1997

*David G. Reid*, Brattleboro, for Plaintiff-Appellee.

*Michael J. Hertz*, Brattleboro, for Defendant-Appellant.

**Morse, J.** Husband in a divorce action appeals from a final judgment of the Windham Family Court challenging, among other provisions, the order requiring him to maintain a life insurance policy for the benefit of the children for as long as the child support obligation remains in effect, and the order requiring him to provide child support beyond the age of majority. We reverse the provision requiring child support beyond the age of majority, and affirm in all other respects.

The parties were married in 1988, but had lived together since 1980. They have four minor children. In March of 1994, the parties separated. In May of that year they signed a Memorandum of Understanding, which covered a variety of subjects, including child support, child custody, maintenance of a life insurance policy by husband, and disposition of the couple's limited personal property. The agreement was incorporated by a magistrate into a temporary support order. A short time later, both parties became dissatisfied with different provisions of the agreement and moved to modify or rescind them. The court's final order and decree departed substantially from the terms of the agreement, but purported to uphold a provision requiring husband to provide child support beyond the age of majority if the children were enrolled as full-time college students.

Husband's threshold contention is that the court erred in deviating from the exact terms of the parties' agreement. It is clear from the record, however, that both parties challenged various provisions of the agreement, and the court was thus entitled to depart from its terms. A separation agreement is not binding when both parties seek, in effect, to modify it. Cf. *McCrea v. McCrea*, 150 Vt. 204, 206, 552 A.2d 392, 393 (1988) (where agreement "was orally rescinded . . . the court was not bound by the stipulation and . . . properly exercised its discretion to order a new disposition"); *Roberts v. Roberts*, 146 Vt. 498, 500, 505 A.2d 676, 678 (1986) (where parties do not seek to enforce prior stipulation as to property settlement, court is not bound to enforce it, but has discretion to order new disposition). Here, the parties contested numerous provisions of the agreement. The court was thus entitled to treat it as rescinded, and divide the property, order support, and award legal and physical custody of the children, in its discretion.

Husband also contends the court erred in ordering him to maintain a life insurance policy with wife as beneficiary for as long as the child support obligation was in effect. Although husband had allowed the policy to lapse prior to the final order and decree, it was in effect when, several months earlier, the magistrate ordered him to maintain the policy for as long as he was obligated to pay child support. Thus, neither *Narwid v. Narwid*, 160 Vt. 636, 638, 641 A.2d 85, 87 (1993), holding that a court may not craft such an order where "there was no evidence that such a policy existed," nor *Schwartz v. Seldin-Schwartz*, 165 Vt. 499, 504, 685 A.2d 665, 668 (1996), holding that the court may not award a money judgment where the evidence does not establish that the amount awarded exists, is apposite. Nor, as husband con-

tends, is the life insurance provision invalidated by the rule that a court may not indirectly award post-mortem spousal maintenance through a life insurance policy "intended to secure the maintenance provision of the decree." *Narwid*, 160 Vt. at 638, 641 A.2d at 87; see also *Theise v. Theise*, 164 Vt. 577, 580, 674 A.2d 789, 791 (1996) (court may not require husband to substitute wife as beneficiary on "key man" policy to "secur[e] post-mortem maintenance payments."). Here, the court ordered husband to maintain the policy specifically to "ensure continued support for the children," and to that end imposed the requirement only "for so long as he has a child support obligation." We have limited the family court's "discretion to order a spouse to maintain an existing life insurance policy for the benefit of the other spouse," *Theise*, 164 Vt. at 580, 674 A.2d at 791, only where the policy is intended "to assure continued *maintenance* payments following the death of the obligor spouse." *Id.* at 581, 674 A.2d at 791 (emphasis added).

Child support presents an altogether different situation from spousal maintenance. As the Supreme Court of Kansas has cogently explained:

> In divorce actions the fundamental difference between the marital and the parental duty of parents is that after a divorce the relation of husband and wife is at an end, and all marital obligations not preserved by the decree are at an end, while the relation of parent and child continues unchanged, and a father's obligation to support his offspring continues to exist unless cut off by the decree.

*Allison v. Allison*, 363 P.2d 795, 799 (Kan. 1961). To be sure, the common law traditionally held that a parent's support obligation terminated at death. *Hornung v. Estate of Lagerquist*, 473 P.2d 541, 545 (Mont. 1970); *Bailey v. Bailey*, 471 P.2d 220, 222 (Nev. 1970). This rule, however, reflected the ancient practice of always placing the children of divorced parents in the custody of the father; hence, there was little need to formally order the father to provide support, and comparatively little risk that the father would disinherit his children. Note, *Continuance of Alimony and Payments for Support of Minor Children after a Husband's Death*, 35 Va. L. Rev. 482, 490 (1949). The modern practice, or at least prevalence, of placing the children with the mother "brought about a considerable change in this situation." *Id.*

> When the parents obtained a divorce . . . and the children were placed in the custody of their mother, the likelihood [of disinheritance] increased, for an embittered or [un]interested father might well disinherit a child who had been placed in the custody of the other spouse. For this reason a number of American jurisdiction[s] began to give the divorce court authority to order the husband to support his minor children after his death, even though this did, in effect, deprive the parent of his right to disinherit his children completely.

*Id.*

Thus, well before the development of § 316(c) of the Uniform Marriage and Divorce Act, which permits child support to survive a parent's death, see 9A U.L.A. 490 (1987), the weight of authority held that absent a specific statutory provision to the contrary a child support obligation could be made binding upon the father's estate. See *In re Moore's Estate*, 234 S.W.2d 847, 854 (Tenn. Ct. App. 1949) ("'the weight of adjudicated authority is . . . that the liability of the father is not necessarily terminated by his death'") (quoting 17 Am. Jur. *Divorce* § 706); *Morris v. Henry*, 70 S.E.2d 417, 420 (Va. 1952) (text writers and a decided majority of cases hold that under modern conditions, liability of father is not necessarily terminated by his death, and that there is no sound reason, unless prohibited by statute, why his estate should not be charged with his obligation to support minor children); *Edelman v. Edelman*, 199 P.2d 840, 842, 848-49 (Wyo. 1948) ("the trend of modern authority" recognizes that child support may survive obligor's death); 2 H. Clark, The Law of Domestic Relations in the United States § 18.1, at 359 (2d ed. 1987) ("Even without [a specific statutory provision] the use of life insurance as an aspect of child support is appropriate where the parent is able to pay the premiums . . . . "); Note, *supra*, at 492-93 ("The majority of jurisdictions now recognize that an obligation to support minor children created by a divorce decree may be made binding on a deceased father's estate."); see generally Annotation, *Death of Obligor Parent as Affecting Decree for Support of Child*, 14 A.L.R.5th 557 (1993) (collecting cases).

The principle underlying every reported decision in this regard is the fundamental public policy, generally expressed in broad statutory terms, imposing an indefeasible duty upon parents to support their minor children. See *Hornung*, 473 P.2d at 545 ("The underlying purpose to be subserved is to provide for the support of the child during minority; and the needs of the child for support are equally as

great in the case of the child whose divorced father dies as in the case where the divorced father survives."); *Moore's Estate*, 234 S.W.2d at 855 (child support statute "is broad and comprehensive in terms . . . . [and] confers upon the court the authority . . . to charge the husband in a manner that will survive his death."); *Morris*, 70 S.E.2d at 422 (statute authorizing award of child support as court deems expedient permits court to decree that support of minor children shall survive death of obligor parent); *Edelman*, 199 P.2d at 844, 848 (statute authorizing award of child support as court sees fit evinces "solemn duty of every father to support his children during their minority, and if he fails to do so, every principle of justice demands that they be thus supported out of his estate").

Courts and commentators have acknowledged that limiting the testamentary discretion of divorced parents places their children in a marginally better position than the children of nondivorced parents, but have found the disparity to be amply justified for reasons of public policy. As explained in *Hornung*, "there are sound reasons grounded in human experience for affording additional legal protection to the child of divorced parents." 473 P.2d at 545. Because it is not uncommon for divorced parents to provide no support in their estate for the children of their former marriage, "any preferential position of the child of divorced parents is predicated on sound public policy." *Id.*; see also *Franklin Life Ins. Co. v. Kitchens*, 57 Cal. Rptr. 652, 657 (Ct. App. 1967) ("Children of divorced parents, often excessively vulnerable to an uncertain future, may need greater protection from the law than children of a united household."); *Moore's Estate*, 234 S.W.2d at 855 ("The rule recognizes that however regrettable it may be, human nature being what it is, a father in some cases is not kindly disposed toward the children of whose custody he has been deprived . . . and moreover that he sometimes manifests this attitude when he comes to dispose of his property.").

Consistent with this view, a majority of jurisdictions additionally permit the court to *secure* child support payments by ordering the obligor parent to maintain some form of trust fund or life insurance for as long as the support obligation remains in effect, generally until the children reach the age of majority. See *Stackhouse v. Russell*, 447 N.W.2d 124, 125 (Iowa 1989) ("Although not universal, [this] view seems consistent with that prevailing in a majority of jurisdictions."); see generally Annotation, *Divorce: Provision in Decree That One Party Obtain or Maintain Life Insurance for Benefit of Other Party or Child*, 59 A.L.R.3d 9 (1974) (collecting cases). The decision of the

New Jersey Supreme Court in *Grotsky v. Grotsky*, 277 A.2d 535 (N.J. 1971), is illustrative. The issue there, as here, concerned the propriety of a divorce judgment directing the husband to keep in force and pay the premiums on all of his existing life insurance policies for the benefit of his three minor children. The husband claimed that the chancery court was devoid of power to bind his estate for the support of his minor children, or to direct the dedication of his life insurance to secure such support. The New Jersey child support statute broadly provided that upon judgment of divorce the court may make such order for "'the care, custody, education and maintenance of the children . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just.'" *Id.* at 537 (quoting N.J.S.A. 2A: 34-23). Noting the extensive and persuasive out-of-state authority approving such provisions, the court held

> that the comprehensive terms of [the child support statute] are not to be narrowed but are to be applied liberally to the end that, where the circumstances equitably call for such action, the court may enter a support order for minor children to survive their father's death and may direct the father to maintain his insurance . . . for the purpose of securing due fulfillment of the support order during their minority.

*Id.* at 540; see also *Franklin Life*, 57 Cal. Rptr. at 657 (under statute broadly authorizing such child support as court deems suitable, divorce judgment requiring husband to maintain life insurance for benefit of minor children was "an appropriate means to secure fulfillment of the obligation of the parent to provide the support, maintenance, and education for his children required by [statute]").

Looking to our own statutes, we find no express or implied inhibition against a divorce judgment requiring a parent to maintain life insurance to secure child support. Indeed, the breadth and underlying purposes of our child support statute provide, if anything, stronger support for such requirements than many of the cases cited above. Vermont's child support statute is premised "on the concept that children should receive the same proportion of parental income after separation or divorce of their parents as they would receive if their parents were living together in one household." 15 V.S.A. § 654. The Legislature has expressly declared "as public policy that parents have the responsibility to provide child support and that child support orders should reflect the true costs of raising children and approxi-

mate insofar as possible the standard of living the child would have enjoyed had the marriage not been dissolved." 15 V.S.A. § 650. Thus, the provisions of a child support order should "be based on the policy of meeting the needs of the children." *C.D. v. N.M.*, 160 Vt. 495, 500, 631 A.2d 848, 851 (1993). We have declared in this regard that § 650 "requires a liberal construction so as to give full force and effect to the intentions of the Legislature." *Viskup v. Viskup*, 150 Vt. 208, 211, 552 A.2d 400, 402 (1988).

These legislative purposes and principles amply support the judgment in this case. Certainly it is reasonable to assume that had the parties here not divorced, husband would have maintained the existing life insurance policy and, in the event of his death, the benefits would have been applied to the support and maintenance of the children. Moreover, as the cases have observed, it is reasonable to assume that husband would have provided for his children in his will. Thus, it is well within the scope of the child support statute and the discretion of the family court to seek to provide a similar financial security for the minor children following the parties' divorce. In the event of husband's untimely demise and consequent cessation of support payments, the children would then not be left in a worse position than they would have been in had the marriage remained intact. Requiring husband to maintain the existing life insurance for the benefit of the children during their minority was a sound and efficient means to secure this objective.

The fundamental goal of the child support statute — to protect and support the children of divorced parents to the same extent as the children of intact marriages — applies with no less force where the divorced parent dies before the children attain their majority. And the children in such a case should be afforded no less financial security. We thus agree with the holding of the court in *Grotsky* that the terms of the support statute "are not to be narrowed but are to be applied liberally to the end that, where the circumstances equitably call for such action, the court may . . . direct the father to maintain his insurance . . . for the purpose of securing due fulfillment of the support order during [the childrens'] minority." 277 A.2d at 540.

■ ■ We thus conclude that the family court's order directing husband to maintain an existing life insurance policy to secure continued child support in the event of his death was proper. Although husband's maintenance of the policy was contemplated in the parties' original Memorandum of Understanding, husband contends that payment of the premiums presents a hardship based on the fact that

his income at the time of the child support hearing was $52,000, $8,000 less than that contemplated in the Memorandum. Husband presented virtually no evidence of such hardship in support of his motion for reconsideration, and made no attempt to modify the award on the basis "of a real, substantial and unanticipated change of circumtances" under 15 V.S.A. § 660(a). Nor does he argue that his total support obligation, including the premium payments, deviates substantially from the child support guidelines. See 15 V.S.A. § 660(b), (d). We find no error.

▮ The judgment does require modification in one respect, however. The court ordered husband to provide child support beyond the age of majority if the children were enrolled as full-time college students. Absent an agreement to the contrary, the court does not have "authority to enter a support order effective beyond the later of a child's majority or termination of secondary education." *McCormick v. McCormick*, 159 Vt. 472, 480, 621 A.2d 238, 242 (1993); see 15 V.S.A. § 658(c) ("The court may order support to be continued until the child attains the age of majority or terminates secondary education whichever is later."). The parties' agreement having been rescinded in effect, there was no valid basis for this provision. Because the family court's award of child support beyond the age of majority may have been interrelated with the court's award of spousal maintenance, the matter is remanded to the family court for reconsideration of the issue of spousal maintenance. See *Semprebon v. Semprebon*, 157 Vt. 209, 216, 596 A.2d 361, 365 (1991) (remand for reconsideration of maintenance award requires reconsideration of "property award because of the interrelationship of these two parts of the financial order").

Husband's other contentions are without merit. He contends the court abused its discretion in awarding sole legal custody of the children to wife, ordering the payment of spousal maintenance, a maintenance supplement, and attorney's fees, and requiring husband to maintain medical and dental insurance through his employer for the four children. We have reviewed the record, however, and conclude that the evidence supports the court's findings and conclusions with respect to each of these provisions of the decree. See *McCrea*, 150 Vt. at 206, 552 A.2d at 394 (if court's findings are supported by reasonable evidence and findings are sufficient to support conclusions, we will not interfere with court's wide discretion).

*The judgment is reversed as to that portion of the order requiring child support beyond the age of majority or termination of secondary education, and the matter is remanded for reconsideration of the award of spousal maintenance consistent with this opinion. The judgment in all other respects is affirmed.*