Cheryl BENSON, on Behalf of Wiley Stanley PATTERSON, Jr., a Minor and Leona C. Lewis, on Behalf of Aaron Patterson, a Minor, Appellants

v.

Danita C. PATTERSON, Executrix of the Estate of Wiley Stanley Patterson, Deceased

Superior Court of Pennsylvania.

Argued Oct. 17, 2000.

Filed Aug. 13, 2001.

Timothy M. Anstine, Harrisburg, for appellants.

James H. Turner, Harrisburg, for appellee.

Before: POPOVICH, FORD ELLIOTT, and BROSKY, JJ.

FORD ELLIOTT, J.

¶ 1 This is an appeal from an order of the orphan's court of Dauphin County dismissing appellants' complaints for support. For the following reasons, we affirm.

¶ 2 The facts of the case are not in dispute. The deceased, Wiley Stanley Patterson ("Father"), was the biological father of the two children involved in this matter, Wiley Stanley Patterson, Jr., ("Stanley") born March 25, 1984, and Aaron Patterson, ("Aaron") born September 10, 1991. Each child was born out of wedlock. Appellants Cheryl Benson and Leona C. Lewis ("Mothers"), the respective mothers of Stanley and Aaron, maintained custody of the children. On February 23, 1998, the Dauphin County Court of Common Pleas, Domestic Relations Section, entered an order of support directing Father to pay $55

per week in support of his son Stanley.[1] This sum included an amount for arrearages from the effective date of May 23, 1994. On September 4, 1998, the court ordered Father to pay $395.39 per month in child support for his son Aaron.[2] This sum also included an amount for arrearages from the effective date of October 7, 1993.

¶ 3 On August 1, 1999, Father died of cancer. Approximately one year before Father died, he was the recipient of a $2.5 million settlement in a personal injury action from an automobile accident. During his life, Father failed to make any of the court-ordered support payments. Shortly before his death, Father made a will which, after making a gift of $20,000 to Stanley and $1,000 to Aaron, left the residue of his estate to his sister and appointed her executrix.[3] Father's gross estate as shown on his Pennsylvania Inheritance Tax Return is $1,099,534.21.

¶ 4 Because of Father's death, on August 10, 1999, the Dauphin County Court of Common Pleas, Domestic Relations Section, terminated the support orders without prejudice. (R. 5a, 6a.) On October 9, 1999, however, Mothers received payments of arrearages from the Dauphin County Domestic Relations Office. On October 26 and 27, 1999, Mothers filed claims against the estate on behalf of the children seeking the continuation of support payments during the children's minorities, and an increase in the amount of support previously ordered.[4]

¶ 5 After hearing oral argument and considering the briefs of both parities, the Honorable Todd A. Hoover entered an order dismissing the complaints. Judge Hoover reasoned that there was no case law or legislative duty of support imposed on an estate of a deceased parent to support a minor child. The court cited *Garney v. Estate of Hain,* 439 Pa.Super. 42, 653 A.2d 21 (1995) (Del Sole, J. dissenting), *appeal denied,* 541 Pa. 626, 661 A.2d 873 (1995), in support of its decision. Mothers filed the instant appeal on May 5, 2000.

¶ 6 The unique issue for our review is whether a child support order, made during Father's life, creates an obligation on his estate to continue support until the children reach majority. Because we find no valid distinction between this specific issue and the issue decided in *Garney,* we are constrained to affirm.

¶ 7 In *Garney,* the parents of three children had been married and divorced. At the time of father's death, there was no court order for child support or other contractual agreement to provide support. *Id.* Father, however, had supported the children financially and, in fact, the children had lived with father and his second wife until the time of father's death. *Id.* at 22. Father's will did not provide for the children. *Id.* Rather, Father's entire estate went to his second wife who refused to care for the children after father died. *Id.* The biological mother sued the estate for support.

---

1. Mother Cheryl Benson receives a net income of $1,956 per month from her employment with the Commonwealth of Pennsylvania.

2. Mother Leona Lewis receives a net income of $1,700 per month from her employment at Dauphin Electric.

3. Father also made a $10,000 gift to his son Demetrius Gable, a $1,000 gift to his daughter Stanisha Mills, and a $1,000 gift to his daughter Kimberly Patterson.

4. Mothers explain that the complaints were filed in orphan's court because this division of the court has exclusive jurisdiction over the personal property of a decedent's estate. 20 Pa.C.S.A. § 711.

¶ 8 The trial court dismissed the complaint for support, and mother appealed to this court. The court held that the estate could not be compelled to pay child support in the absence of a support order or contractual agreement. This court agreed with the trial court that "the legislature has declined to impose a duty of support on the estate of a divorced parent, and there is no case law to be cited in support of such duty." *Id.* at 21.

¶ 9 Instantly, Mothers argue that the trial court's reliance on *Garney* is misplaced, as the facts of *Garney* differ from this matter in one crucial respect. Here, support orders were entered against Father before his death. Mothers posit that it is not necessary for us to overturn *Garney* in order to grant the relief they seek. Instead, Mothers would have this court refrain from extending the holding in *Garney* to cases where the deceased parent was subject to a support order before death.

¶ 10 Along with the factual circumstances of this matter and *Garney*, we have carefully considered prior case law and our support statutes. We believe that while the instant facts are distinguishable, in that support orders were entered at the time of Father's death, it is a distinction without a difference.

¶ 11 We begin by recognizing that at common law, "[a] parent has no . . . obligation to provide for the support of his infant children after his death. . . ." 59 Am. Jur.2d, Parent and Child, section 54, at 199

(1987). Closely related is the common law rule that a father has no duty to settle his estate upon his children. These principles were recognized by our supreme court in *In re Fessman Estate*, 386 Pa. 447, 452, 126 A.2d 676, 678 (1956), where it stated that " . . . a father, in the absence of a contract, has no legal obligation to support his children after his death, and is under no legal obligation to leave his children anything by will."

¶ 12 The receipt and amount of child support may be determined between parents by entering into an agreement, or by court order. While a marriage settlement agreement is a contract and may be separately enforced against the estate of a decedent, *see Fessman Estate, supra*, the only basis for a court order requiring a parent to support a child arises from the imposition of a statutory duty. That duty is codified at 23 Pa.C.S.A. § 4321(2) [5] and is well nigh absolute. *Funk v. Funk*, 376 Pa.Super. 76, 545 A.2d 326, 332 (1988). In *Garney*, this court implicitly held that the codification of the duty did not extend it after death. *Garney*, 653 A.2d at 21.

¶ 13 Therefore, we are bound by *Garney*,[6] which concluded that the legislature has declined to impose a duty of support on the estate of a parent. *Id.* We point out that our supreme court denied *allocatur* in the *Garney* case. *Garney v. Estate of Hain*, 541 Pa. 626, 661 A.2d 873 (1995). Thus, it appears that the supreme court agreed with the majority's statement of

---

**5.** The statute reads:

§ 4321. *Liability for support*

. . . .

(2) Parents are liable for the support of their children who are unemancipated and 18 years of age or younger.

23 Pa.C.S.A. § 4321

**6.** We recognize the very limited text of the holding by the majority in *Garney*. However,

it would not be intellectually honest to ignore the dissent by Judge Del Sole wherein he addresses all of the same issues which Mothers place before the court today. Although we could certify this case to the court *en banc* to revisit the holding of *Garney*, we are cognizant that our supreme court must ultimately decide this issue.

the law and we have no authority to disregard it. *See Commonwealth v. Martin,* 727 A.2d 1136, 1141 (Pa.Super.1999) ("It is well-settled, however, that until the Supreme Court overrules a decision of this Court, our decision is the law of this Commonwealth."), quoting *Commonwealth v. Leib,* 403 Pa.Super. 223, 588 A.2d 922, 932 (1991).

¶ 14 Moreover, there appears to be no useful distinction between a child who claims support from the estate with or without a support order. The duty imposed by § 4321(2) applies to *all* children under the age of 18. Having concluded *Garney* controls, we nonetheless feel compelled to recognize, as did Judge Del Sole in dissent, that there are strong public policy concerns which would support extending the duty of support beyond the death of a parent.[7]

¶ 15 A review of case law from other jurisdictions shows a split of authority regarding this issue. *See e.g., Abrego v. Abrego,* 812 P.2d 806, 811–812 (Okla.1991) (identifying the majority and minority views); Susan L. Thomas, J.D., *Death of Obligor Parent as Affecting Decree for Support of Child;* 14 A.L.R.5th 557 (1993) (addressing both theories and case exam-

ples). A number of jurisdictions have followed the common law approach, holding that absent either a contractual obligation or a statutory provision, the duty to provide child support under a court order terminates automatically upon the death of the payor parent.[8] These courts reason that if a court desires to impose a greater duty than provided by common law, an agreement or decree of court must contain express language. *Abrego,* 812 P.2d at 811. "In the absence of such language, these courts assert no authority to impose the obligation on the deceased parent's estate." *Id.*

¶ 16 Jurisdictions following the common law approach often raise the inherent consequences of imposing such an obligation on a parent's estate. *Id.* at 812. We, too, recognize the host of unanswered questions that surface with this issue. For instance, some states find that continuing support obligations after death would result in circumventing the long-established common law right of a testator to make unrestricted dispositions of his estate. *See e.g., Streight v. Streight's Estate,* 226 Or. 386, 360 P.2d 304, 306 (1961). Some of these states raise 14th amendment con-

---

7.  We note that Judge Del Sole's vigorous dissent in *Garney* observed that the path of law in Pennsylvania has become increasingly forceful in its efforts to provide for the support of minor children. *Garney,* 439 Pa.Super. at 45–46, 653 A.2d 21. "It is evident that the legislature has increasingly since 1985 expressed a policy designed to provide support for minor children, and enforce that right." *Id.*

8.  *See e.g. Pittman v. Pittman,* 419 So.2d 1376 (Ala.1982); *Broaca v. Broaca,* 181 Conn. 463, 435 A.2d 1016 (1980) (but court can require a parent with the duty of child support to name his child as beneficiary of an existing life insurance policy for the maintenance of the child's minority under General Statute § 46(b)–84); *Flagler v. Flagler,* 94 So.2d 592 (Fla.1957); *Foskey v. Foskey,* 257 Ga. 736,

363 S.E.2d 547 (1988); *In re Estate of Sweeney,* 210 Kan. 216, 500 P.2d 56 (1972); *Bowling v. Robinson,* 332 S.W.2d 285 (Ky.1960); *Wooddy v. Wooddy,* 258 Md. 224, 265 A.2d 467 (1970); *Smith v. Smith,* 349 So.2d 529 (Miss.1977); *Gardine v. Cottey,* 360 Mo. 681, 230 S.W.2d 731 (1950) (*en banc* ); *Bailey v. Bailey,* 86 Nev. 483, 471 P.2d 220 (1970); *Dupuis v. Click,* 135 N.H. 333, 604 A.2d 576 (1992); *Keehn v. Keehn,* 137 A.D.2d 493, 524 N.Y.S.2d 238 (1988); *Mullen v. Sawyer,* 277 N.C. 623, 178 S.E.2d 425 (1971); *Streight v. Streight's Estate,* 226 Or. 386, 360 P.2d 304 (1961); *Kennedy v. Kennedy,* 270 S.C. 358, 242 S.E.2d 417 (1978); *Colombo v. Walker Bank & Trust Co.,* 26 Utah 2d 350, 489 P.2d 998 (1971); *Scudder v. Scudder,* 55 Wash.2d 454, 348 P.2d 225 (1960).

cerns and conclude that such a result would put children of divorced parents in a preferred status. Unlike children in intact families, children of divorced parents would essentially have a right to inherit from a deceased parent due to the mandatory nature of the support order. *Id.; see also* appellee's brief at 4.

¶ 17 The Nevada supreme court raised other questions that were likely to occur when a child support order is permitted to be enforced against the payor parent's estate.

> [S]hould not the obligation of the father's estate run equally to all his children, not just those whom he is under a court order to support, but those who are living in his household or children by a subsequent marriage? Are the children he is ordered to support merely general creditors of his estate, or do they enjoy some priority? ... May the amount owed under a child support order be modified after the father's death, and if so, does the child, the surviving parent, or the estate seek the modification? If modification is permitted, which court has jurisdiction the request [sic]? Is it the probate court, the court in which the decree was ordered, or the court in which the suit is brought seeking the modification? [A]re provisions for the child made by the father, such as life insurance, trust benefits, bequests, or intestate succession in addition to or a credit against the support obligation? Must the administration of the estate be kept open during the minority of the child, or should the sums found due for support be placed in a trust account or be paid over to the child's guardian? Are benefits accruing to the child from the father's death, such as social security payments, veterans benefits, pension plans, employee death benefits, in addition to or a credit against the support payments?

*Bailey v. Bailey,* 86 Nev. 483, 471 P.2d 220, 223 (1970).

¶ 18 Although recognizing the concerns expressed by common law jurisdictions, other states have advanced a more modern approach, concluding that a child support obligation survives the death of the payor parent These states have recognized that death does not terminate the original purpose of the support order, which is the welfare of the child for a specific term of years (until they reach majority).[9] This approach finds the common law rules, cited *supra,* to be outdated in the context of child support obligations.

¶ 19 Rather, courts finding that the duty of support survives death put stock in the well-established principle that a parent's duty to support a minor child is absolute. *See Funk, supra.* To reach this result, courts often interpret the durational language of the support obligation, "during minority" or "until further order of court," as evidence of a clear expression of an intention that payments shall continue after death. Further, many hold that allowing support obligations to stand after a parent's death is a natural conclusion reached in recognition of a legislature's

---

**9.** *See e.g. Newman v. Burwell,* 216 Cal. 608, 15 P.2d 511 (1932); *West v. West,* 241 Mich. 679, 217 N.W. 924 (1928); *Garber v. Robitshek,* 226 Minn. 398, 33 N.W.2d 30 (1948); *Hornung v. Estate of Lagerquist,* 155 Mont. 412, 473 P.2d 541 (1970); *Spencer v. Spencer,* 165 Neb. 675, 87 N.W.2d 212 (1957); *Hill v. Matthews,* 76 N.M. 474, 416 P.2d 144 (1966); *Koidl v. Schreiber,* 214 N.J.Super. 513, 520 A.2d 759 (1986); *Fox v. Burden,* 603 N.W.2d 916 (S.D.1999); *Knowles v. Thompson,* 166 Vt. 414, 697 A.2d 335 (1997); *Morris v. Henry,* 193 Va. 631, 636, 70 S.E.2d 417 (1952); *Scott v. Wagoner,* 184 W.Va. 312, 400 S.E.2d 556 (1990); *Caldwell v. Caldwell,* 5 Wis.2d 146, 92 N.W.2d 356 (1958); *Edelman v. Edelman,* 65 Wyo. 271, 199 P.2d 840 (1948).

goal to provide financially for children of divorced parents. "The death of the father does not end the need of his infant children for food and shelter. The decree of a court requiring the father to provide for the wants of his children would be a futile thing if it could be defeated by a will leaving all of his property to someone else." *Morris v. Henry*, 193 Va. 631, 70 S.E.2d 417, 423 (1952).

> These jurisdictions acknowledge the need for striking a balance between infringing upon the parent's right to disinherit his/her child (the strongest argument in favor of non-survival) against the protection to be afforded the minor children of divorced parents (the strongest argument in favor of survival). Invariably, and not unpredictably, these courts consider the latter more important than the former.

*Estate of Brown v. Hale*, 100 Idaho 300, 597 P.2d 23, 25 (1979).

¶ 20 Recently, Ohio and Massachusetts addressed the instant issue and both concluded that a child support order made during the father's life created an obligation on his estate to continue support until the child reaches majority. Both states recognized that the common law rules at the heart of this issue were antiquated and that legislative changes had significantly increased the obligation of parents to support their children. Each state, though, traveled a different path to reach this end.

¶ 21 For instance, Ohio courts have authority to require the payor parent to maintain a life insurance policy to secure fulfillment of support payments during the child's minority. Approximately 20 jurisdictions provide courts with such authori-ty.[10] *Webb v. Webb*, 1997 WL 797719 *3 (Ohio App. 2 Dist.1997), noting the dissent in *Gardner v. Gardner*, 264 Ga. 138, 441 S.E.2d 666, 668 (1994), citing to 59 A.L.R. 29 (1974, Supp.1993). Other states require the child to file a claim against the estate and then allow for a lump sum payment to satisfy future obligations. This lump sum may either be paid directly to the child or to the court to be released to the child in monthly installments. *See generally*, A.R.S. § 25–327c; *Edelman v. Edelman*, 65 Wyo. 271, 199 P.2d 840, 849 (1948).

¶ 22 The *Webb* court comprehensively explained that the common law rules and other general objections to this approach do not present valid obstacles to a court's securing its child support order with an insurance policy. *Id.* at *5–10. For instance, the life insurance requirement does not violate the common law rule that a father does not have an obligation to support his child after death, as the parent's obligation to pay the insurance premiums is part of the present support obligation rather than an obligation that exists after death. *Id.* at *5. Nor does requiring life insurance conflict with the common law rule that a parent has no duty to settle an estate on their child. *Id.* "The insurance requirement does not force a parent to recognize his children in his or her will and does not alter the parent's ability to disinherit his or her children if the parent so chooses." *Id.* at *6. Further, this approach avoids interfering with the disposition of the estate, as monthly installments paid out of the estate would be unnecessary. *Id.*

¶ 23 The supreme court of Massachusetts in *L.W.K. v. E.R.C.*, 432 Mass. 438, 735 N.E.2d 359 (2000), approached the is-

---

**10.** In fact, Pennsylvania courts have authority to direct the continued maintenance and beneficiary designation of existing insurance policies originally purchased during a marriage or to purchase such a policy to protect the interest of a party when equitably dividing marital property. 23 Pa.C.S.A. § 3502(d).

sue from a different angle. Appellee in *L.W.K.* argued, as Father argues in the instant case, that this was an issue for the legislature to resolve. (*See* appellee's brief at 2–3.) The supreme court of Massachusetts concluded, "we are not legislating but applying unequivocal policy mandates of the Legislature to the specific facts of this case." *L.W.K.*, 735 N.E.2d at 364–365. The court held that the issue was one of statutory interpretation, holding that the statute concerning child support shall be liberally construed to effectuate the public policy of the state—that dependent children shall be "maintained, as completely as possible, from the resources of their parents, ... thereby relieving or avoiding, at least in part, the burden borne by the citizens of the commonwealth." *Id.* at 365.

¶ 24 In *L.W.K.*, the court held that "a legally enforceable obligation to pay child support, like other financial obligations of the testator, takes precedence over testamentary dispositions and must be satisfied prior to any distribution of assets under the will." *Id.* at 364. The court concluded that the child's claim for support was in the nature of a preferred creditor's claim and must be satisfied prior to testamentary dispositions.

¶ 25 The court explained that its decision to enforce payments after death would not create uncertainty for estate planning purposes.

> Unlike alimony, an order to provide for the support of a minor child terminates

at a specific age. Accordingly, the total amount of child support that a parent is obliged to pay may be readily determined—in contrast to an order to provide alimony that in many circumstances terminates only when a spouse remarries (a date uncertain in the future) or on the recipient's death (similarly uncertain).

*Id.* at 367. "Beyond satisfaction of his support obligation, however, a parent is free to exercise his testamentary discretion with respect to a minor child, as all others, and may disinherit her." *Id.* at 364.

¶ 26 While some jurisdictions have followed the modern trend by broadly interpreting their statutory enactments bearing on parental duties,[11] other states have legislatively commanded change by enacting new statutes or amending existing statutes to protect the interest of minor children. For instance, our research indicates that certain jurisdictions affording economic protection to children of divorced parents have adopted section 316(c) of the Uniform Marriage and Divorce Act ("the Act"), which repudiates the common law rules. 9A U.L.A. 940 (1987). *See* Ariz.Rev.Stat. § 25–327; Colo.Rev.Stats. § 14–10–122(3); 750 Ill. Comp. Stat. Ann. ⅝₁₀(d); Ind.Code Ann. § 31–1–11.5–17(d); KY Rev. Stat. Ann. § 403.213(3); Minn.Stat. Ann. § 518.64(4); Mont.Code.Ann. § 4–4–208(5). The relevant section provides:

> Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child *are ter-*

---

**11.** *See e.g. Webb, supra; L.W.K., supra; Scott v. Wagoner,* 184 W.Va. 312, 400 S.E.2d 556, 560 (1990) (interpreting statute regarding child support orders to provide courts with authority to enforce the obligation as a lien against obligator's estate when compelling equitable considerations are present); *Morris v. Henry,* 193 Va. 631, 70 S.E.2d 417 (1952) (statute interpreted liberally to effectuate plain intention of legislature, which was to empower courts of equity to protect rights

and interests of infant defendants, as there was no express or implied statutory inhibition against the right); *Kiken v. Kiken,* 149 N.J. 441, 694 A.2d 557 (1997) (liberal interpretation of child support statute should be afforded to give full force and effect to the intentions of the Legislature. "We are not concerned with the right of a surviving child to participate in a parent's estate. We are concerned with the right of a child, as one to whom the decedent owed an obligation ...").

*minated by emancipation of the child but not by the death of a parent obligated to support the child.* When a parent obligated to pay support dies, the amount of support may be modified, revoked, or commuted to a lump sum payment, to the extent just and appropriate in the circumstances.

Unif. Marriage and Divorce Act, § 316(c), 9A U.L.A. 490 (1987) (emphasis added) The intent of this Act is to encourage parents to provide support for their children during minority. *Webb*, at *4. In the absence of parents making provisions for support of their minor children after death, the Act gives a court the "discretion and authority to sua sponte secure the children's support after the parent's death." *Id.*

¶ 27 Although we believe that there is merit to the modern approach, the devil is in the details. *See Bailey, supra.* Any restructuring of support laws, practices, or procedures is better left to the legislature and the supreme court. We can, however, as an intermediate appellate court, look to stimulate review by our supreme court where reform or clarification is necessary. *See Morgan v. McPhail*, 449 Pa.Super. 71, 672 A.2d 1359, 1363 (1996) (noting the function of an appellate court is to uphold the decisional law of the supreme court, but that a second function of the intermediate appellate court is to stimulate revision in the law by the highest court where reform or clarification is necessary), *affirmed*, 550 Pa. 202, 704 A.2d 617 (1997). Although we must affirm, we do so with the hope that our supreme court and legislature will revisit this issue.

¶ 28 Affirmed.